Estate of Gerald F. Gonwa, by James M. Gonwa, Representative and Special Administrator, Gerald Gonwa Irrevocable Trust and Janice Gonwa Irrevocable Trust, Petitioners-Appellants,

v.

Wisconsin Department of Health and Family Services, Respondent-Respondent.

Court of Appeals

*No. 02–2901. Submitted on briefs April 23, 2003.—Decided June 11, 2003.*

**2003 WI App 152**

(Also reported in 668 N.W.2d 122.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Michael D. Dean* of *Michael D. Dean, L.L.C.* of Waukesha.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. The estate of Gerald F. Gonwa and the Gerald Gonwa Irrevocable Trust and Janice Gonwa Irrevocable Trust appeal from a circuit court order upholding a decision of the Wisconsin Department of Health and Family Services that applied a divestment penalty against Gerald pursuant to WIS. STAT. § 49.454 (2001–02)[1] in considering his application for medical assistance (MA).[2] The Department determined that Gerald divested assets when he and his spouse, Janice, sold a $150,000 private annuity to an irrevocable trust.

¶ 2. The Estate raises claims of due process, waiver and lack of jurisdiction against the Department based on the Department's failure to raise the divestment issue at Gonwa's first hearing before the administrative law judge (ALJ). We reject the Estate's arguments. We conclude that Gerald's due process rights were not violated because he did not have a property interest in MA benefits. We further conclude that the Department has an ongoing duty to review MA eligibil-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version.

[2] Gerald Gonwa died in December 2001, and his wife, Janice Gonwa, died shortly thereafter. This appeal is brought on behalf of Gerald's estate by the Gonwas' son, James Gonwa, as the personal representative of the estate.

918

ity and therefore did not waive its right to address Gerald's divestment of assets or lose jurisdiction to decide his eligibility.

¶ 3. At issue in this case is whether a private annuity held in an irrevocable trust is governed by the general divestment statute, WIS. STAT. § 49.453 or by WIS. STAT. § 49.454, which specifically addresses the treatment of trusts in determining MA eligibility. The Department determined, pursuant to § 49.454(3)(b), that the Gonwas' sale of a $150,000 private annuity to an Irrevocable Trust that prohibits payments to Gerald or payments made for his benefit is a divestment pursuant to § 49.453. Giving due weight to the Department's decision, we conclude that its interpretation of the applicable MA statutes is reasonable. We therefore affirm the circuit court order upholding the Department's determination.

## *BACKGROUND*

¶ 4. On February 21, 2000, Gerald and Janice established the Gerald and Janice Gonwa Irrevocable Trust Agreement. The Irrevocable Trust named Gerald and Janice as initial trust income beneficiaries and Gerald's children, James Gonwa and Patricia West, as principal beneficiaries. That same day, Gerald and Janice sold to the Irrevocable Trust $150,000 of assets pursuant to a Private Annuity Agreement. Pursuant to the terms of the annuity, Janice, as the "community spouse,"[3] was to receive $1,424.55 per month beginning

---

[3] A "community spouse" is a person who is married to an institutionalized person but is not himself or herself an institutionalized person. *Tannler v. DHSS*, 211 Wis. 2d 179, 181 n.1, 564 N.W.2d 735 (1997) (citing WIS. ADMIN. CODE § HSS 103.065(3)(b); Medical Assistance Handbook § 23.2.1).

May 1, 2000. As of March 2002, the annuity amortization schedule reflected a balance of $135,813.13 remaining to be paid to Janice from the annuity.

¶ 5. Gerald was born on September 10, 1930. At the time of the Department's final decision, he was a seventy-one-year-old institutionalized resident of Washington county. He entered a nursing home in March 2000 and first applied for institutional MA on June 15, 2000. That application was denied due to excess assets in the form of an IRA account, failure to complete verification, and a determination that he had divested $150,000 into an annuity. On October 12, 2000, Gerald reapplied for institutional MA seeking backdated eligibility. The Washington County Department of Social Services issued a Notice of Decision on November 6, 2000, informing Gerald that his application had been denied for all periods requested due to income in excess of MA program limits.

¶ 6. Gerald sought review of this determination and ALJ Kenneth Duren conducted a "fair hearing" on January 24, 2001. Duren issued a proposed decision on February 2, 2001, determining that Gerald was ineligible for MA. The Department then issued a final decision deeming Gerald to be eligible but finding that Janice had to contribute substantial funds to Gerald's "post-eligibility cost of care." The Department remanded the case to the county for redetermination. Gerald petitioned for judicial review of the Department's decision in Case No. 01–CV–0368.

¶ 7. On remand, the Department sent a "manual negative notice" to Gerald on March 23, 2001, indicating that his application had been denied due to divestment to the Trust. Gerald appealed this ruling to the Division of Hearings and Appeals on April 19, 2001. On May 2, 2001, the Department sent a memo to Gerald

explaining the county's determination that the Trust had divested $150,000 in funds during the "look-back period" when it purchased the private annuity, thereby creating divestment ineligibility from February 21, 2000, until January 1, 2003.

¶ 8. The issue presented by Gerald's April 19 appeal was whether the county agency correctly denied his application due to the divestment to an irrevocable trust. Also at issue was whether the Department was barred from considering the annuity based on administrative rules and due process. In a written decision issued on March 21, 2002, ALJ Gary M. Wolkstein determined that the agency acted properly in denying Gerald's application. Citing to the MA Handbook,[4] Wolkstein determined that payments from a trust to anyone other than the institutionalized person are a divestment. Because the payments from the Trust-funded annuity were made to Janice, the community spouse, as opposed to Gerald, the institutionalized person, Wolkstein determined that Gerald divested assets and that the divestment made Gerald "asset ineligible" for institutional MA until January 1, 2003. Wolkstein's determination was issued in the form of a final decision of the Department on March 21, 2002.[5] Gerald petitioned for judicial review of the Department's decision in Case No. 02–CV-0306.

---

[4] Pursuant to WIS. STAT. § 49.45(34), the Department has created a medical assistance manual ("MA Handbook"). The MA Handbook is designed to assist state and local agencies in implementing the federal MA program. *See Tannler*, 211 Wis. 2d at 184.

[5] Pursuant to WIS. ADMIN. CODE § HA 3.09(9)(a), "Except for a proposed decision . . . or by order in a specific case, the decision of the administrative law judge shall be the final decision of the department in proceedings under this chapter."

¶ 9. The circuit court consolidated Gerald's cases. In a written decision issued September 5, 2002, the circuit court upheld the Department's determination that Gerald was ineligible for MA based on the divestment of assets. The circuit court found that because the provisions of the Irrevocable Trust prevented any payment to Gerald or for his benefit once he had applied for MA, despite being funded with his assets, the assets had been transferred within the meaning of WIS. STAT. § 49.454(3)(b), thereby subjecting him to the divestment penalty set forth in WIS. STAT. § 49.453(2) and (3).

¶ 10. Gerald's estate appeals.[6]

## DISCUSSION

### Waiver/Due Process

¶ 11. The Estate begins by arguing, as it did before ALJ Wolkstein and the circuit court, that the Department lost jurisdiction to determine the divestment question and violated Gerald's right to due process by finding him eligible for MA benefits following the first hearing and then later finding him ineligible based on the divestment of assets. The Estate argues that the Department waived its right to deny Gerald benefits based on divestment of assets because it knew of the private annuity at the time of the first hearing but "failed to prepare and argue" it.

¶ 12. The Department responds that Gerald was not found eligible at the first hearing. In support, the Department notes that the matter was remanded with

---

[6] The Gerald Gonwa Irrevocable Trust and the Janice Gonwa Irrevocable Trust also appeal. Unless the context requires otherwise, we refer to the collective appellants as "the Estate."

instructions to "review and re-determine [Gerald's] eligibility for MA." Therefore, the Department reasons that Gerald did not have a property interest in MA benefits and his due process rights were not violated. The Department additionally argues that it has an ongoing responsibility to determine eligibility and that Gerald bears the burden of proving eligibility.

¶ 13. In order to demonstrate a right to procedural due process, a person must establish that a constitutionally protected property or liberty interest is implicated. *Stipetich v. Grosshans*, 2000 WI App 100, ¶ 24, 235 Wis. 2d 69, 612 N.W.2d 346. Property interests are not created by the Constitution, but are created and defined "by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). In order to "have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it." *Id.* (citing *Bd. of Regents of State Colleges*, 408 U.S. at 577).

¶ 14. Here, the parties disagree as to whether the Department found Gerald to be eligible for MA benefits at the first hearing. The Department's decision directs:

> That the matter is remanded to the county agency with instructions to rescind the denial of petitioner's application for Institutional—MA; review and re-determine his eligibility for MA, attributing all annuity payments to the community spouse, for all periods for which he may be eligible under his application including back-dating, with written notice.

We agree with the Department that this language does not indicate a determination that Gerald was eligible for MA. As the Department states in its March 21, 2002 decision, the remand to the county for redetermination "reopened [Gerald's] MA application process." Rescinding the denial of MA benefits and remanding for a review and redetermination simply placed Gerald's application in its original posture—neither granted nor denied.

¶ 15. We also reject Gerald's contention that the Department waived its right to address the annuity issue by failing to raise it at the first hearing. The record reflects that the county representative attempted to raise the issue of whether the private annuity agreement was a divestment at the first hearing, but after ascertaining that the question involved an issue separate from the excess income issue, the ALJ denied her request. The Department's second denial of Gerald's benefits was then based on the divestment of assets.

¶ 16. The Department's duties with respect to MA are set forth in Wis. Stat. § 49.45(2), which provides in part that the Department shall "[e]xercise responsibility relating to fiscal matters . . . and general supervision of the [MA] program" and "[d]etermine the eligibility of persons for [MA]." *See* § 49.45(2)(a)1 and 3. The Department argues that these duties are ongoing and, even when MA eligibility is established initially, eligibility is still subject to redetermination especially when, as here, the local agency has information suggesting divestment. Moreover, the MA Handbook sets out post-eligibility procedures by which the Department may reexamine all eligibility factors that are subject to change to decide if eligibility continues. *See* MA Hand-

book § 29.2.0. Given the Department's duties as set forth in § 49.45(2)(a)1 and 3 and the procedures set forth in the MA Handbook, we conclude that an initial determination of eligibility does not preclude a later redetermination of that status.

¶ 17. Finally, the Department correctly points out that it is the duty of the applicant, here Gerald, to demonstrate MA eligibility. *See* WIS. ADMIN. CODE § HFS 102.03; 2 B. ABRAMSON ET AL., ADVISING OLDER CLIENTS AND THEIR FAMILIES § 11.20 (1999) ("An applicant must prove his or her eligibility by submitting verification of all facts relevant to the eligibility determination."). The applicant must provide information regarding his or her assets and divestments. *See* § HFS 102.03(3)(h) and MA Handbook Appendix § 37.3.0. Thus, MA eligibility is not a default position that the Department must rebut but rather a privilege for which the applicant must prove eligibility.

¶ 18. We conclude that the Department did not waive its right to make a determination of ineligibility due to divestment of assets. The Department has an ongoing duty to ensure that a MA recipient is eligible and the recipient bears the ongoing burden of proving eligibility. We further conclude that Gerald's due process rights were not violated by the Department's eligibility determination. An individual could only claim a property interest in MA benefits if he or she were in fact eligible for those benefits. We therefore turn to the merits of the Estate's argument.

### Applicable Law

¶ 19. Medical assistance is a joint federal and state program aimed at ensuring medical care for those who cannot pay for their own care. *See Tannler v.*

*DHSS*, 211 Wis. 2d 179, 190, 564 N.W.2d 735 (1997). To be eligible for MA in Wisconsin, an applicant must meet the financial requirements set forth in Wis. Stat. ch. 49. Pursuant to Wis. Stat. § 49.453, an applicant can become ineligible for certain MA benefits if he or she transfers assets in a manner prohibited by statute. These transfers are prohibited in order to prevent those who can afford to pay for their own medical needs from receiving medical assistance. *See Tannler*, 211 Wis. 2d at 190.

¶ 20. In an effort to prevent circumvention of Medicaid requirements, the Medicaid statutes are constantly evolving and have been revised repeatedly, causing consternation to providers, applicants, lawyers and judges. The following excerpt captures this sentiment:

> "There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience. Indeed, one approaches them at the level of specificity herein demanded with dread, for not only are they dense reading of the most tortuous kind, but Congress also revisits the area frequently, generously cutting and pruning in the process and making any solid grasp of the matters addressed merely a passing phase." *Rehabilitation Ass'n of Virginia v. Kozlowski*, 42 F.3d 1444 (4th Cir. 1994).

*Johnson v. Guhl*, 91 F. Supp. 2d 754, 758 (D.N.J. 2000). Wisconsin Supreme Court Justice Shirley S. Abrahamson echoed this theme in her concurrence in *Tannler*, 211 Wis. 2d at 191 (footnote omitted):

> Anyone who works with medical assistance statutes begins by appreciating that the federal and state statutes are extremely complex and may fairly be described as incomprehensible. The statutes are char-

926

acterized by ambivalence and ambiguity, by a confusing mix of means-tested programs and entitlements, and by uneasy compromises among different and often conflicting policies.

¶ 21. Bearing these cautions in mind, we turn to the issue in this case which involves both the general provisions regarding transfers and divestment of assets, including annuities, under Wis. Stat. § 49.453, and the Medicaid trust statute, Wis. Stat. § 49.454.[7] Also relevant to the issue on appeal are the administrative rules governing MA eligibility set forth in Wis. Admin. Code ch. 103 and the guidelines set forth in the Department's Medicaid policy manual, the "MA Handbook."

¶ 22. Wisconsin Stat. § 49.453 governs the divestment of assets. Subsection 49.453(2) addresses ineligibility for MA for institutionalized individuals such as Gerald. It provides that "if an institutionalized individual or his or her spouse . . . transfers assets for less than fair market value on or after the institutionalized individual's look-back date, the institutionalized individual is ineligible for medical assistance . . . [f]or nursing facility services." Sec. 49.453(2)(a)1. The look-back date is "the date that is 36 months before, or with respect to payments from a trust or portions of a trust that are treated as assets transferred by the covered individual under s. 49.454(2)(c) or (3)(b) the date that is 60 months before . . . the covered individual is both an institutionalized individual and has applied for medical assistance." Sec. 49.453(1)(f)1.

---

[7] The Wisconsin medical assistance statutes at issue, Wis. Stat. §§ 49.453 and 49.454, are based on the respective federal statutes set forth in 42 U.S.C.A. §§ 1396r and 1396p(c) and (d).

¶ 23. WISCONSIN STAT. § 49.454 specifically addresses the treatment of trust amounts by the Department. Regarding irrevocable trust amounts, it provides in relevant part:

> **(1)** APPLICABILITY. (a) Except as provided in sub. (4), this section applies to an individual with respect to a trust if assets of the individual or the individual's spouse were used to form all or part of the corpus of the trust and if any of the following persons established the trust other than by will:
>
> 1. The individual.
>
> 2. The individual's spouse.
>
> . . . .
>
> **(3)** TREATMENT OF IRREVOCABLE TRUST AMOUNTS. For purposes of determining an individual's eligibility for, or amount of benefits under, medical assistance:
>
> . . . .
>
> *(b)* Any portion of an irrevocable trust from which, or any income on the corpus from which, no payment could under any circumstances be made to or for the benefit of the individual, is considered to be an asset transferred by the individual subject to s. 49.453. The asset is considered to be transferred as of the date of the establishment of the trust, or, if later, the date on which payment to the individual was foreclosed. The value of the trust shall be determined for purposes of s. 49.453 by including the amount of any payments made from that portion of the trust after that date. (Emphasis added.)

Sec. 49.454(1) & (3).

928

¶ 24. The issue in this case is whether a private annuity held in an irrevocable trust is governed by the general divestment statute, WIS. STAT. § 49.453, or by WIS. STAT. § 49.454, which specifically governs the treatment of trust amounts for purposes of MA eligibility. The Department determined that § 49.454 applied to the Gonwas' assets held in the Irrevocable Trust despite the fact that they were sold to the Irrevocable Trust as a private annuity.

### Standard of Review

¶ 25. The construction of the MA statutes and their application to undisputed facts present a question of law that we review de novo. *Tannler*, 211 Wis. 2d at 183. While we are not bound by an agency's conclusion of law, we defer to an agency's decision in certain circumstances. *Id.* In doing so, we generally accord an administrative agency's statutory interpretation one of three levels of deference: great weight, due weight or no deference. *Id.* at 184.

> In order to accord great weight deference, a court must conclude that: 1) the agency was charged by the legislature with the duty of administering the statute; 2) the interpretation of the agency is one of long-standing; 3) the agency employed its specialized knowledge or expertise in forming the interpretation; and 4) the agency's interpretation will provide consistency and uniformity in the application of the statute.
>
> If an agency conclusion does not meet all of the criteria necessary to accord it great weight deference, this court may give "due weight" deference to the agency conclusions. Due weight deference, the middle level of review, is appropriate "if the agency decision is 'very nearly' one of first impression." However, if the

> case is one of first impression for the agency and the
> agency lacks any special expertise, then the court must
> review the agency's conclusion de novo.

*Id.* (citations omitted).

¶ 26. Gonwa contends that the Department's determination is only entitled to deference when it is consistent with the MA Handbook. Gonwa argues that the Department's decision deviates from the MA Handbook and therefore a de novo standard is appropriate. *See Keip v. DHFS*, 2000 WI App 13, ¶¶ 13–15, 232 Wis. 2d 380, 606 N.W.2d 543 (a de novo standard of review is appropriate when an agency's position on an issue has been inconsistent). However, for reasons set forth below, we do not conclude that the Department's decision is inconsistent with its handbook. Therefore, we agree with the Department that due weight deference is appropriate.

¶ 27. Under the due weight standard, we will sustain the agency's interpretation if it is reasonable— even if another interpretation is equally reasonable. However, we need not sustain the agency's interpretation if another interpretation is more reasonable than the one employed by the agency. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 287, 548 N.W.2d 57 (1996).

### *Divestment of Assets*

¶ 28. The transaction underlying this appeal occurred in February 2000, when Gerald and Janice sold to the "Gerald F. and Janice R. Gonwa Irrevocable Trust" $150,000 pursuant to a Private Annuity Agreement. Pursuant to the terms of the Private Annuity Agreement, the Irrevocable Trust would make payments to the Gonwas, except when one intended to

make an application for Medicaid, all payments under the Private Annuity Agreement would be allocated and paid out to the nonapplying spouse and the applying spouse "shall not be entitled to any payments" under the Agreement.

¶ 29. Similarly, the trust agreement names both Gerald and Janice as the "Settlor" of the Irrevocable Trust and the "Income Beneficiary." However, pursuant to the provisions governing the disposition of principal and income, at such time as either intends to make application for Medicaid, "then in that event, all of the income of this Trust shall be allocated and paid out to the Settlor who is not making an application . . . . The Settlor who is making said application (or for whose benefit the application is being made) *shall not be entitled to any payments of income under this trust.*" (Emphasis added.)

¶ 30. The parties disagree as to whether the sale of a private annuity to an irrevocable trust is governed by WIS. STAT. § 49.453 or WIS. STAT. § 49.454. The purpose of statutory construction is to determine and give effect to the legislative intent, which is ascertained by considering the language of the statute and, if necessary, the scope, history, context, subject matter and object intended to be remedied or accomplished. *State v. Delaney*, 2003 WI 9, ¶ 13, 259 Wis. 2d 77, 658 N.W.2d 416. We first look to the language of a statute and attempt to interpret it based on "the plain meaning of its terms." *Id.*, ¶ 14. When construing multiple statutes, we seek to harmonize them. *Id.*, ¶ 13. "It is a cardinal rule of statutory construction that conflicts between statutes are not favored and will be held not to exist if the statutes may otherwise be reasonably construed." *Id.* (citation omitted).

¶ 31. Gerald contends that the conveyance is governed by the general divestment statute, WIS. STAT. § 49.453, which prohibits only the conveyance of assets for "less than fair market value." He also argues that the MA Handbook expressly permits conveyance of assets from an institutionalized person to his or her spouse. Gerald contends that he remains eligible for MA because he transferred assets for a fair market value and transferred them to his spouse. The Department argues that whether the sale of the private annuity complied with § 49.453 is not relevant because WIS. STAT. § 49.454, which specifically governs irrevocable trusts, governs Gerald's conveyance of assets.

¶ 32. The law supports the Department's argument. The general rule of statutory construction in Wisconsin where two statutes relate to the same subject matter is that the specific statute controls over the general statute. *Gottsacker Real Estate Co., v. DOT*, 121 Wis. 2d 264, 269, 359 N.W.2d 164 (Ct. App. 1984). Here, both WIS. STAT. §§ 49.453 and 49.454 overlap in the treatment of divestments. However, § 49.453 is a general statute while § 49.454 is a specific statute dealing not only with irrevocable trusts, but also the circumstances under which prohibited payments to the MA recipient are "considered to be an asset transferred by the individual." *See* § 49.454(3)(b).

¶ 33. In essence, the Department rejected Gerald's contention that it must treat the conveyance of his assets to the Irrevocable Trust as an annuity simply because the income payments from the Irrevocable Trust are structured like those of a conventional annuity. The Department cites to federal guidelines which advise that trust provisions are to be given precedence over the general transfer of assets provisions and that

assets placed in trust should be dealt with "exclusively under the trust provisions." *See* Transmittal No. 64, § 3259.6G., "Use of Trust vs. Transfer Rules for Assets Placed in Trust."[8] The Medicaid trust provisions "apply regardless of why the trust was established; whether the trustees have or exercise any discretion under the trust; any restriction of when and whether distributions can be made from the trust; or any restrictions on the use of distributions." *Johnson*, 91 F. Supp. 2d at 763.

¶ 34. Gerald relies on § 14.12.3 of the MA Handbook which provides that the policies described in the "trusts section" do not apply to annuities. However, § 14.12.2 of the MA Handbook addresses irrevocable trusts and provides that the creation of an irrevocable trust is a divestment if created during the look-back period or any time after. According to the MA Handbook, "the *divested amount* is the total amount of the created trust" or, if funds are added to an irrevocable trust, "*[t]he divested amount* is the amount of added funds." MA Handbook § 14.12.2. Under either provision, the assets in the Irrevocable Trust are clearly divested for purposes of MA eligibility. Although the MA Handbook is not a statute or a rule, we again are confronted with a specific provision prevailing over a general provision. Because § 14.12.2 specifically envisions that the creation of an irrevocable trust can constitute a divestment, we agree with the Department that § 14.12.3 excepting annuities from the trust provisions addresses annuities that are not held in an irrevocable trust.

---

[8] This document is part of the State Medicaid Manual available at http://cms.hhs.gov/manuals/pub45/pub_45.asp at Chapter 3 "Eligibility."

¶ 35. In applying the statutes, the Department determined that regardless of whether the asset held in an irrevocable trust is transferred as an annuity, it is nevertheless held in an irrevocable trust. WISCONSIN STAT. § 49.454(1)(a) expressly applies to "an individual with respect to a trust" if that trust was established by the individual or his or her spouse and "*if assets of the individual or the individual's spouse were used to form all or part of the corpus of the trust.*" (Emphasis added.) In specifically addressing irrevocable trusts, § 49.454(3)(b) provides that "[f]or purposes of determining an individual's eligibility for, or amount of benefits under, medical assistance . . . *[a]ny portion of an irrevocable trust from which, or any income on the corpus from which, no payment could under any circumstances be made to or for the benefit of the individual, is considered to be an asset transferred by the individual* subject to s. 49.453 [the divestment statute]." (Emphasis added.)

¶ 36. The Department's construction is consistent with the purpose of MA and the Medicaid trust statutes. As the Department points out, the MA provisions governing treatment of trust assets were enacted in 1993 in an effort to further tighten loopholes. *See Skindzier v. Comm'r of Soc. Servs.*, 784 A.2d 323, 330 (Conn. 2001). In addressing divestment, the House Committee on Energy and Commerce stated in its report recommending passage of a Medicaid qualifying trust statute:

The Committee feels compelled to state the obvious. Medicaid is, and always has been, a program to provide basic health coverage to people who do not have sufficient income or resources to provide for themselves. When affluent individuals use Medicaid qualifying trusts and similar "techniques" to qualify for the pro-

934

gram, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee.

*Cohen v. Comm'r of Div. of Med. Assistance*, 668 N.E.2d 769, 772 (Mass. 1996) (citing H.R. REP. No. 265, 99th Cong., 1st Sess., pt.1, at 72 (1985)).

¶ 37. Here, the Irrevocable Trust expressly prohibits payments to Gerald or payments made for his benefit, in the event he applied for MA. Therefore, although the Irrevocable Trust was established by Gerald and Janice and funded with their assets, *see* WIS. STAT. § 49.454(1)(a), "no payment could under any circumstances be made to or for the benefit of Gerald," *see* § 49.454(3)(b). Section 49.454(3)(b) clearly identifies such an asset as "transferred by the individual" and subject to treatment as a divested asset under WIS. STAT. § 49.453.

¶ 38. Finally, we reject the Estate's contention that the spousal exception set forth in § 14.4.0(8) of the MA Handbook[9] and 42 U.S.C.A. § 1396p(c)(2)(B)(i) applies to Gerald's transfer of assets. The spousal exception provides that "[a] divestment that occurred in the

---

[9] This exception is also set forth in the federal statutes at 42 U.S.C.A. § 1396p(c)(2)(B)(i), which provides that certain transfers of assets will not render an individual ineligible for MA to the extent that "the assets—(i) were transferred to the individual's spouse or to another for the sole benefit of the individual's spouse." Like the spousal exception set forth in the MA Handbook, this exception does not apply to the Gonwas' Irrevocable Trust. Not only were the assets transferred to a trust as opposed to Janice or another individual, but the assets were not transferred for Janice's "sole benefit" since the Gonwas' children were the principal beneficiaries.

lookback period or any time after does not affect eligibility if ... [t]he institutionalized person ... divests a nonhomestead asset ... to [a] spouse." MA Handbook § 14.4.0(8) (emphasis omitted). However, the Estate's argument overlooks that the $150,000 private annuity was not transferred to Janice but rather to an irrevocable trust.

¶ 39. Giving due weight to the Department's final decision and order, we conclude that the Department's interpretation of WIS. STAT. § 49.454 as applying to a private annuity held in an irrevocable trust is reasonable.[10]

## *CONCLUSION*

¶ 40. We conclude that the Department's construction of WIS. STAT. § 49.454 is reasonable. We therefore affirm the Department's determination finding Gerald ineligible for MA assistance based on a divestment of assets.

*By the Court.*—Order affirmed.

[10] We therefore do not address the Estate's arguments, premised on the application of WIS. STAT. § 49.453, which pertain to the value of the annuity or the disbursement of annuity income. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).