CHIPPEWA COUNTY DEPARTMENT OF HUMAN SERVICES,
Petitioner-Respondent,

v.

Samuel O. BUSH,
Respondent-Appellant.

Court of Appeals

*No. 2005AP1113. Submitted on briefs January 19, 2006.*
*—Decided July 19, 2007.*

2007 WI App 184

(Also reported in 738 N.W.2d 562.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Nicholas J. Vivian* of *Bakke Norman, S.C.*, New Richmond.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James B. Sherman*, Chippewa County Corporation Counsel, Chippewa Falls.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Leone Bush, Samuel O. Bush's[1] wife, lives in a nursing home in Chippewa County and receives medical assistance to pay for her expenses at the home. The Chippewa County Department of Human Services (the Department) determined that Leone was eligible to receive medical assistance. The Department informed Bush that he was required to contribute to Leone's maintenance while she lived in the nursing home and received medical assistance. Bush sought reversal of that determination by invoking administrative review with the Division of Hearings and Appeals (DHA). The DHA hearing examiner reversed the Department; the Department filed a petition with the circuit court to review that decision pursuant to WIS. STAT. ch. 227 (2003–04).[2] The circuit court reversed the hearing examiner. Bush appeals the circuit court's judgment and order reversing the hearing examiner.

¶ 2. We conclude that WIS. STAT. § 49.455[3] bars the Department from seeking support from a community spouse pursuant to WIS. STAT. § 49.90 for his or her

---

[1] For clarity purposes, we will refer to Leone Bush as "Leone" and Samuel Bush as "Bush" throughout this opinion.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] WISCONSIN STAT. § 49.455 states in relevant part:

> (2) APPLICABILITY. The department shall use the provisions of this section in determining the eligibility for medical assistance under s. 49.46 or 49.47 and the required contribution toward care of an institutionalized spouse.

> (3) ATTRIBUTION OF INCOME. (a) Except as provided in par. (b), no income of a spouse is considered to be available to the other spouse during any month in which that other spouse is an institutionalized spouse.

institutionalized spouse who is receiving medical assistance. We therefore reverse the circuit court's order and affirm and reinstate the hearing examiner's determination.

## FACTS

¶ 3. Leone Bush lives in a nursing home in Chippewa County, and receives institutional medical assistance. Leone previously lived in Green County, where she received medical assistance at no cost. However, when Leone moved to Chippewa County, the Chippewa County Department of Human Services determined that, under WIS. STAT. § 49.90, her husband Samuel Bush was required to contribute some of his income to her care in the amount of $776.48 per month, minus a $45 personal allowance (which has since been changed to a $749.13 post-allowance contribution). On

(b) Notwithstanding ch. 766, for the purposes of sub. (4), the following criteria apply in determining the income of an institutionalized spouse or a community spouse:

1. Except as determined under subd. 2 or 3., unless the instrument providing the income specifically provides otherwise:

a. Income paid solely in the name of one spouse is considered to be available only to that spouse.

b. Income paid in the names of both spouses is considered to be available one-half to each spouse.

. . . .

(5) RULES FOR TREATMENT OF RESOURCES . . . .

. . . .

(d) During a continuous period of institutionalization, after an institutionalized spouse is determined to be eligible for medical assistance, no resources of the community spouse are considered to be available to the institutionalized spouse.

184

May 17, 2004, Leone[4] appealed to the Division of Hearings and Appeals.

¶ 4. Before the hearing examiner issued a ruling, the Department, pursuant to Wis. Stat. § 49.90(2), filed a motion to compel maintenance with the Chippewa County Circuit Court. The motion, filed on June 30, 2004, included an affidavit from Department economic support specialist and case manager Kelly Goettl in which she averred that she had calculated Samuel's spousal support pursuant to § 49.90, notified him of her determination that he owed $776.48 per month, and requested that the court order Samuel to pay that amount. The circuit court stayed further proceedings on the Department's motion to compel maintenance pending the outcome of this ch. 227 review.

¶ 5. On August 27, 2004, the hearing examiner ruled that Leone was not liable for any of the costs of her medical assistance because she had no income, and that Bush's income could not be attributed to Leone under Wis. Stat. § 49.455 because § 49.455 takes precedence over Wis. Stat. § 49.90.[5]

---

[4] Although the Bushes' attorney names Samuel, rather than Leone, as the party who initiated an appeal through a fair hearing request, the record identifies Leone as the party appealing to the Division of Hearings and Appeals, but Samuel as the respondent in the circuit court. While the alternate identification of either Leone or Samuel as the named party contributes to some procedural confusion of this case, we do not view it as substantively affecting the disposition of this case.

[5] On August 31, 2004, the Department issued a determination notifying Leone that she was eligible for medical assistance and that she was not required to contribute to her cost of care. In a September 23, 2004 letter to the circuit court, the Bushes' attorney argued that the August 31 determination constituted an "updated" determination which superceded any previous determination of obligation by Bush. However, this argument

¶ 6. On September 24, 2004, the Department filed a ch. 227 petition to review the DHA hearing examiner's decision; the petition was filed under the same case number as the previously filed motion to compel.[6] The circuit court reversed the hearing examiner's decision, ordered Bush to provide support to Leone, and remanded the case to the Division of Hearings and Appeals for a hearing to determine if Bush's support obligation was calculated correctly. Bush appeals.

## DISCUSSION

### I. Standard of Review[7]

¶ 7. In an appeal of an administrative agency decision, we review the agency's decision, not the circuit

---

appears to have been waived on appeal. Neither Bush nor the Department addresses on appeal the potential significance of the August 31 determination that no cost of care contribution was owed by the Bushes. Consequently, we assume for purposes of this appeal that the Department's determination that Leone is responsible for $749.13 of her monthly medical costs as allocated from her husband's assets remains at issue.

[6] Rather than receiving a new case number for the Wis. Stat. ch. 227 review petition, the Department inserted the case number of the motion to compel maintenance, which it filed pursuant to Wis. Stat. § 49.90(2). This possibly explains the lack of a record of the proceedings before the hearing examiner. Although the Department was required to transmit the record to the circuit court under Wis. Stat. § 227.55, it did not, and Bush did not object in the circuit court and does not refer to the lack of a record on appeal. This is highly unusual. However, because the parties agree on the few material facts and dispute only the hearing examiner's construction of the statutes, we, like the circuit court, are able to resolve the parties' dispute despite the lack of the complete administrative record.

[7] Both parties state the wrong standard of review. Bush and the Department cite the standard of review relating to a circuit

186

court's, and the scope of our review is the same as the circuit court's. *See Target Stores v. LIRC*, 217 Wis. 2d 1, 11, 576 N.W.2d 545 (Ct. App. 1998). In this case we review the DHA hearing examiner's interpretation and application of Wis. STAT. §§ 49.455 and 49.90 in determining whether Bush was responsible to pay for any part of the medical assistance costs related to the nursing home placement of his wife, Leone. The interpretation and application of these statutes to undisputed facts is a question of law, which we independently review. *See Keup v. DHFS*, 2004 WI 16, ¶ 12, 269 Wis. 2d 59, 675 N.W.2d 755. We therefore are not bound by an administrative agency's interpretation and application of a statute. *Id.*

■

¶ 8.    Nonetheless, generally we accord varying degrees of deference of an administrative agency's construction of a statute, to correspond with the agency's expertise and with the legislature's charge to that agency to administer the statute. *See Racine Harley-Davidson, Inc. v. State*, 2006 WI 86, ¶ 14, 292 Wis. 2d 549, 717 N.W.2d 184. However, in this case, neither party argues that we should accord any deference to the hearing examiner's decision. In addition, in *Racine Harley-Davidson*, the supreme court determined that a decision of the Division of Hearing and Appeals reviewing a determination by the Department of Health and Family Services is not entitled to any deference where the Department has not adopted the hearing examiner's decision. *Id.*, ¶ 49 & n.66; *see also Artac v. DHFS*, 2000

court's interpretation of a statute. Both parties fail to recognize that, in this case, we review the hearing examiner's decision, not the circuit court's. Consequently, neither party argues the applicable standard of review of an administrative agency's decision.

WI App 88, ¶ 13 & n.6, 234 Wis. 2d 480, 610 N.W.2d 115. We therefore grant no deference to the DHA hearing examiner's interpretation and application of WIS. STAT. §§ 49.455 and 49.90.

## II. Analysis

¶ 9.   At the core of this dispute is the Department's asserted requirement that Bush pay for part of Leone's nursing home expenses, which, in turn, would reduce the amount of medical assistance benefit payments the Department would incur on Leone's behalf. The Department seeks to obtain these contributions by invoking its authority under WIS. STAT. § 49.90(2) to compel a spouse to financially support his or her institutionalized spouse. The legislature has adopted the policy that each spouse has an equal obligation to support each other. WIS. STAT. § 49.90(1m); *see also* § 49.90(1)(a)1. ("The . . . spouse of any dependent person who is unable to maintain himself or herself shall maintain such dependent person, so far as able, in a manner approved by the authorities having charge of the dependent, or by the board in charge of the institution where such dependent person is . . . .").

¶ 10.   Bush argues that WIS. STAT. § 49.455 bars the Department from invoking WIS. STAT. § 49.90 to require him to support Leone while she receives medical assistance benefits and lives in the nursing home. In support, he points to the plain language of § 49.455, which, in his view, unambiguously governs in determining the required contribution toward the care of an institutionalized spouse who receives medical assistance benefits. Bush also argues that his construction of § 49.455 comports with the purpose of the statute and the statute's federal counterpart, 42 U.S.C. § 1396r-5. He further argues that, in contrast, § 49.90 is a general

provision which "contains only the general rules for imposing liability on relatives," and that the statute does not specifically mention § 49.455 or "its application to relatives of individuals receiving medical assistance benefits."

¶ 11. The Department frames the issue as whether WIS. STAT. § 49.455 bars it from seeking support from a community spouse for an institutionalized spouse pursuant to WIS. STAT. § 49.90. The Department argues that § 49.455 applies only to determining the eligibility of an applicant for medical assistance benefits and that once that determination is made, it is then obligated under § 49.90 to assess a community spouse's ability to provide support to the institutionalized spouse. Stated differently, the Department asserts that §§ 49.455 and 49.90 address two separate and distinct issues. Specifically, it maintains that § 49.455 applies only to determine the eligibility of an applicant for medical assistance benefits, and that § 49.90 applies to post-eligibility determinations of the amount of support a nondependent spouse is obligated to provide to a dependent spouse. In a related argument, the Department argues that the only way to harmonize the two statutes is to interpret them as addressing two separate and distinct issues.

¶ 12. Based on our de novo review, we conclude that WIS. STAT. § 49.455 is the controlling statute in determining the allocation of income between a community spouse and an institutionalized spouse who receives medical assistance benefits. We begin with an examination of the language of § 49.455. Statutory interpretation begins with the statute's text; we give the text its common, ordinary, and accepted meaning, except that we give technical or specially defined words their technical or special definitions. *State ex rel. Kalal*

*v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. In construing a statute we are to give deference to the policy choices made by the legislature in enacting the law. *Id.*, ¶ 44. We also consider the scope, context and structure of the statute itself. *Id.*, ¶¶ 46, 48. If this process of analysis yields a plain meaning, then there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46.

¶ 13. We first observe that WIS. STAT. § 49.455 establishes a comprehensive statutory framework governing both medical assistance eligibility and the allocation of income and resources for the care of the community spouse and the institutionalized spouse. For instance, § 49.455(2) expressly states: "APPLICABILITY. The department shall use the provisions of *this section* in determining the eligibility for medical assistance . . . *and the required contribution toward care of an institutionalized spouse.*" (Emphasis added.) We see from this language that § 49.455(2) applies not only to determining the eligibility of an applicant for medical assistance benefits, but also to determining the required contribution by a community spouse to the support of an institutionalized spouse.

¶ 14. The required contribution by a community spouse to his or her institutionalized spouse is controlled by WIS. STAT. § 49.455(3)(a), which provides that "[e]xcept as provided in par. (b), no income of a spouse is considered to be available to the other spouse *during*

*any month in which that other spouse is an institution-alized spouse."* (Emphasis added.) In pertinent part, subparagraph (b) states:

> Notwithstanding ch. 766, for the purposes of sub. (4), the following criteria apply in determining the income of an institutionalized spouse or a community spouse:
>
> 1. Except as determined under subd. 2. or 3., unless the instrument providing the income specifically provides otherwise:
>
> a. Income paid solely in the name of one spouse is considered to be available only to that spouse.
>
> b. Income paid in the names of both spouses is considered to be available one-half to each spouse.

Together, § 49.455(2) and (3)(b) provide the statutory framework for determining the availability of income to establish the eligibility of a medical assistance applicant, as well as the available income from a community spouse to an institutionalized spouse while the institutionalized spouse resides in an institution.

¶ 15.  When we look at the text of WIS. STAT. § 49.90, it becomes apparent that § 49.90 does not apply in determining a community spouse's required contribution to an institutionalized spouse receiving medical assistance benefits. There is first the general expression of the legislature's policy that "[e]ach spouse has an equal obligation to support the other spouse as provided in this chapter." WIS. STAT. § 49.90(1m). We derive nothing more from this language than the expression of a general policy. Turning to § 49.90(1)(a)1., we find language expressed in more specific terms concerning the liability of a spouse to maintain a spouse unable to financially care for him or herself: "The . . . spouse of

any dependent person[8] who is unable to maintain himself or herself shall maintain such dependent person, so far as able, in a manner approved by the authorities having charge of the dependent, or by the board in charge of the institution where such dependent person is . . . ." This language is cast in broad terms; we agree that in general § 49.90(1)(a)1. obligates a spouse to support a dependent spouse who is unable to financially care for him or herself while residing in an institution. However, this language must give way to the more specific terms of Wis. Stat. § 49.455, which, as we have explained, is specifically concerned, in part, with the allocation of income from a community spouse to an institutionalized spouse receiving medical assistance benefits. We see no language in § 49.90 suggesting that the legislature intended for this statute to control in determining a community spouse's ability to support his or her institutionalized spouse as long as the institutionalized spouse receives medical assistance benefits.

¶ 16.   Turning to the Department's arguments, we conclude that the Department's construction of Wis. Stat. §§ 49.455 and 49.90 is unreasonable. The Depart-

---

[8] The Department explains that "[a] 'dependent person' is defined as ' . . . an individual who is eligible for relief under s. 49.015.' " *See* Wis. Stat. § 49.01(2). According to the Department, Wis. Stat. § 49.015 establishes eligibility for receiving public assistance, including medical assistance. Because the definitions contained in § 49.01 and the requirements for determining eligibility for relief are both contained in subchapter II of Wis. Stat. ch. 49, the Relief Block Grants subchapter, it is not apparent that the definition of a "dependent person" there applies to medical assistance recipients. In any event, because the Department does not fully develop this argument, we do not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

ment ignores the language of § 49.455(2) and (3)(a) in arguing that § 49.455 applies only to determining medical assistance eligibility. Subsection 49.455(2) plainly states that the provisions of that section apply in determining eligibility for medical assistance *and* in determining the required contribution to an institutionalized person's care. In addition, § 49.455(3)(a) unambiguously declares that the income of a community spouse is not available to the institutionalized spouse "during any month in which that other spouse is an institutionalized spouse," with exceptions not applicable where, as in this case, a community spouse's income was paid solely to him. *See* § 49.455(3)(b)1.-2.[9] The Department also ignores the plain language of § 49.455(3)(b)1.b.-c. and (3)(b)2. in arguing that § 49.90 is the only vehicle for assessing a community spouse's ability to support his or her institutionalized spouse.

¶ 17.   We also observe that the Department fails to cite any authority supporting its construction of WIS.

---

[9] WISCONSIN STAT. § 49.455(3)(b)1.-2. reads as follows:

1. Except as determined under subd. 2. or 3., unless the instrument providing the income specifically provides otherwise:

a. Income paid solely in the name of one spouse is considered to be available only to that spouse.

b. Income paid in the names of both spouses is considered to be available one-half to each spouse.

c. Income paid in the name of either or both spouses and to one or more other persons is considered to be available to each spouse in proportion to the spouse's interest or, if payment is made to both spouses and each spouse's individual interest is not specified, one-half of the joint interest is considered to be available to each spouse.

2. Except as provided in subd. 3., if there is no trust or other instrument establishing ownership, income received by a couple is considered to be available one-half to each spouse.

STAT. § 49.90 as imposing an obligation on a community spouse to contribute to an institutionalized spouse's medical assistance benefits. Indeed, § 49.90 is located in the "General Provisions" subchapter of WIS. STAT. ch. 49, whereas WIS. STAT. § 49.455 is part of the subchapter specifically governing medical assistance. Although both statutes concern the allocation of income from a community spouse to an institutionalized spouse, we conclude that § 49.455, as the more specific provision relating to medical assistance, trumps the general provisions of § 49.90 in determining what, if any, financial obligation Bush has to provide support for Leone while she resides in the nursing home as a recipient of medical assistance benefits.[10] *See Estate of Gonwa v. DHFS*, 2003 WI App 152, ¶ 32, 265 Wis. 2d 913, 668 N.W.2d 122 (when two statutes relate to the same subject matter, the more specific statute controls over the general statute).

¶ 18.    The history of WIS. STAT. § 49.455 supports our construction of the statute.[11] The spousal impoverishment provisions of § 49.455 were enacted in accordance with the Medicare Catastrophic Coverage Act of

_____

[10] The Department asserts that we should harmonize WIS. STAT. §§ 49.455 and 49.90 by construing the two statutes as addressing two separate and distinct issues. However, as we point out, both statutes concern the allocation of income from a non-dependent spouse to an institutionalized dependent spouse; the statutes are distinguished in that § 49.455 specifically concerns medical assistance and § 49.90 applies generally to circumstances where a spouse is institutionalized and does not receive medical assistance. Thus, the Department's approach to harmonizing these statutes does not apply.

[11] We may consult the legislative history of a statute to demonstrate that "history supports our interpretation of a statute otherwise clear on its face." *Seider v. O'Connell*, 2000 WI 76, ¶ 52, 236 Wis. 2d 211, 612 N.W.2d 659.

1988, 102 Stat. 754, 42 U.S.C. § 1396r-5 (MCCA). *See Wisconsin Dep't of Health & Family Srvs. v. Blumer*, 534 U.S. 473, 477–85 (2002) (describing Wisconsin's adoption of the MCCA's requirements); *see also* 42 U.S.C. § 1396a(a)(51) (2007) ("[a] State plan for medical assistance must . . . meet the requirements of section 1396r-5 of this title . . . ."). The MCCA was created to protect elderly and disabled persons from impoverishment caused by catastrophic health care costs. H.R. Rep. No. 105(II) at 35 (1987), *as reprinted in* 1988 U.S.C.C.A.N. 858. In particular, the provisions protecting the income and assets of a community spouse when his or her institutionalized spouse applies for Medicaid (medical assistance) are "intended to protect the spouse remaining in the community from being impoverished by Medicaid's requirements for coverage of the nursing home stay. It would require that states increase both the assets and the income that the community spouse could retain." *Id.*, 1988 U.S.C.C.A.N. 916.

¶ 19.   In *Blumer*, the U.S. Supreme Court examined the history and meaning of the MCCA's spousal impoverishment provisions, as well as Wisconsin's implementation of the MCCA's requirements. The Court explained that until 1989, when the MCCA took effect, states generally deemed one spouse's income to be available to the other spouse, while not treating those assets titled solely in the name of a community spouse as available to the institutionalized spouse. *Id.* at 479–80. The MCCA was enacted to protect community spouses from pauperization in such situations, by requiring that states take additional steps to ensure that community spouses are allowed sufficient income and resources when their spouses are institutionalized and found to be Medicaid eligible. *Id.* at 480–82.

¶ 20. Wisconsin is required to comply with the MCCA's requirements. 42 U.S.C. § 1396a(a)(51). As a result, the provisions of Wis. Stat. § 49.455 protecting the income and assets of community spouses mirror those of the MCCA. *Compare* Wis. Stat. § 49.455(3)(a) *and* 42 U.S.C. § 1396r-5(b)(1) (generally prohibiting the consideration of a community spouse's income as available for medical assistance care); *compare* § 49.455(3)(b)1.a. *and* § 1396r-5(b)(2)(A)(i) (protecting income paid solely to the community spouse as untouchable under the "name-on-the-check rule"); and *compare* § 49.455(4)-(6) *and* § 1396r-5(d) (establishing allowances for community spouses and enabling the transfer of income from an institutionalized spouse to a community spouse). Thus, based on this history, we see that the purpose and intent of § 49.455 is to establish specific procedures in compliance with the MCCA's requirements for the protection of a community spouse's income and the transfer of additional income to the community spouse from the institutionalized spouse where necessary.

¶ 21. Viewing the history and purpose of Wis. Stat. § 49.455 in conjunction with its plain language, we see that our construction of § 49.455 serves its purpose. The idea behind the spousal impoverishment statutes is to prevent the pauperization of the community spouse. Our construction of § 49.455 ensures that Bush's income is not diminished to a point where Bush cannot support himself.

¶ 22. In summary, it is plain that Wis. Stat. § 49.455 specifically governs the allocation of income between an institutionalized spouse and a community spouse after a determination of medical assistance eligibility. To that extent, § 49.455 controls, rather than the more general provisions of Wis. Stat. § 49.90, which

196

require each spouse to support the other spouse to the extent possible. Thus, we conclude that the hearing examiner correctly determined that the Department is barred from invoking § 49.90 to require Bush to provide maintenance for Leone to offset the medical assistance payments the Department makes to Leone's nursing home.

## CONCLUSION

¶ 23. We conclude that WIS. STAT. § 49.455 specifically governs the determination of a community spouse's responsibility for supporting his or her institutionalized spouse who receives medical assistance benefits. Accordingly, because Leone receives medical assistance benefits, we conclude that the Department is barred from seeking support from Bush pursuant to WIS. STAT. § 49.90 for Leone's care while she resides in the nursing home and receives medical assistance benefits. We therefore reverse the circuit court's order and judgment, and affirm and reinstate the hearing examiner's decision.

*By the Court.*—Judgment and order reversed.

197