David A. NOYCE, Plaintiff-Co-Appellant,

DEPARTMENT OF WORKFORCE DEVELOPMENT UNINSURED
EMPLOYER'S FUND, Involuntary-Plaintiff-Appellant,

NATIONWIDE MUTUAL INSURANCE COMPANY,
Grievant-Co-Appellant,

v.

AGGRESSIVE METALS, INC. and Labor and Industry
Review Commission, Defendants-Respondents.

Court of Appeals

*No. 2014AP2143. Submitted on briefs February 6, 2015.*
*—Decided July 28, 2016.*

2016 WI App 58

On behalf of the involuntary-plaintiff-appellant, the cause was submitted on the briefs of *Joseph P. Danas, Jr.* and *Brian W. Baird* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

On behalf of the plaintiff-co-appellant, the cause was submitted on the briefs of *Jason R. Oldenburg* and *Jack L. Davila* of *The Previant Law Firm, S.C.*, Milwaukee.

On behalf of the grievant-co-appellant, the cause was submitted on the briefs of *Dustin T. Woehl* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Willard G. Neary* and *Joseph A. Abruzzo* of *Lichtsinn & Haensel S.C.*, Milwaukee; and *Abigail C. S. Potts*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Lundsten, Higginbotham and Kloppenburg, JJ.

¶ 1. HIGGINBOTHAM, J. This is a worker's compensation case. David Noyce was working for Aggressive Metals, Inc. when he was injured in a workplace accident. Noyce, the Department of Workforce Development Uninsured Employers Fund, and Nation-

wide Mutual Insurance Company, Aggressive Metal's liability insurer, appeal a circuit court order affirming a Labor and Industry Review Commission decision that Aggressive Metals is not liable to Noyce or to the Fund for any compensation or reimbursement for Noyce's injuries.[1] In so concluding, the Commission held that Aggressive Metals was not subject to the Worker's Compensation Act (the Act) under Wis. Stat. § 102.04 (2013–14)[2] on the date of Noyce's injuries.

¶ 2. Noyce argues that Aggressive Metals was subject to the Act on the date of his injuries, January 4, 2011, based on prior case law interpreting a statutory scheme that is similar, but not identical, to the statutory scheme at issue in this case, and which has not been reversed or distinguished. Aggressive Metals argues that it was not subject to the Act on the day Noyce was injured based on the plain language of the current statutory scheme.[3] We agree, and therefore, we affirm the Commission's decision.

[1] The appellants are aligned in their arguments as to the dispositive issue on appeal, and when we refer to those arguments we will, for ease of discussion, refer to them as being advanced by Noyce. Similarly, Aggressive Metals and the Commission are aligned in their arguments as to the dispositive issue on appeal, and when we refer to those arguments we will, also for ease of discussion, refer to them as being advanced by Aggressive Metals.

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted. The 2013–14 version of the statute that is at issue in this appeal, Wis. Stat. § 102.04(1)(b), is unchanged from the version that was in effect when Noyce was injured.

[3] Aggressive Metals alone asserts, without supporting argument, that the Commission's order should be affirmed because Noyce was not an employee under Wis. Stat. § 102.07, and, also alone, argues that the part of the Commission's order that concludes that Aggressive Metals is not liable to the Fund

## BACKGROUND

¶ 3. The pertinent facts, taken from the Commission's findings, are not disputed. On or about December 27, 2010, Noyce approached the owners of Aggressive Metals seeking employment. The sole employees of Aggressive Metals at that time were the owners Neil and Nick Holland, who had been working together for Aggressive Metals since shortly after Neil started the company in February 2010. Aggressive Metals offered Noyce one week's work helping install insulation in the building in which Aggressive Metals was housed.

¶ 4. On his last day of work, January 4, 2011, Noyce sustained substantial injuries while working for Aggressive Metals when he fell through a ceiling. Aggressive Metals did not have worker's compensation coverage when the injuries occurred. After an investigation, the Fund determined that Aggressive Metals was subject to the Act and provided temporary disability benefits and medical expenses to Noyce related to his injuries.

¶ 5. Aggressive Metals filed a "reverse application" with the Department of Workforce Development seeking an order to reverse the initial determination

should be affirmed because the Fund failed to properly appeal. We do not address these issues because our conclusion that Aggressive Metals is not subject to the Act is dispositive. *See Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (if a decision on one issue disposes of an appeal, we will not generally decide the other issues raised).

Aggressive Metals creates needless work and potential confusion for the judges, court staff, and opposing counsel by failing to provide section headings or page numbers for its argument in its table of contents in its principal brief on appeal. We admonish counsel that WIS. STAT. RULE 809.19(1)(a) requires appropriate page references to various portions of the brief, including headings of each section of the argument.

that Aggressive Metals was subject to the Act when Noyce was injured.[4] After a hearing, the Department found that Aggressive Metals was subject to the Act under Wis. Stat. § 102.04(1)(b)1. on the date of Noyce's injuries and was required to have worker's compensation insurance.

¶ 6. Aggressive Metals filed a petition for review with the Commission. The Commission concluded that Aggressive Metals was not an "employer" within the meaning of Wis. Stat. § 102.04(1)(b)1. and 2. on January 4, 2011, and therefore, it was not subject to the Act when Noyce was injured. The Commission also concluded that Aggressive Metals is not liable to Noyce or the Fund for any compensation or reimbursement under the Act. Noyce appeals.

## DISCUSSION

### A. Standard of review

¶ 7. Noyce seeks judicial review of the Commission's decision denying Noyce benefits under the Act, on the ground that Aggressive Metals was not subject to the Act when Noyce suffered a work-related injury. We review the Commission's decision, not the circuit court's. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981).

---

[4] Whether Aggressive Metals was subject to the Act when Noyce was injured matters because uninsured employers subject to the Act are required to compensate the injured employee and to reimburse the Fund for payments such as the disability benefits and medical expenses that the Fund provided Noyce here. *See* Wis. Stat. §§ 102.81 and 101.82.

¶ 8. We are not bound by an administrative agency's decision. *See Chippewa Cty. DHS v. Bush*, 2007 WI App 184, ¶ 7, 305 Wis. 2d 181, 738 N.W.2d 562. Nonetheless, we generally accord varying degrees of deference to an administrative agency's construction of a statute to correspond with the agency's expertise and with the legislature's charge to that agency to administer the statute. *See Racine Harley-Davidson, Inc. v. State*, 2006 WI 86, ¶ 14, 292 Wis. 2d 549, 717 N.W.2d 184. There are three levels of deference courts accord an administrative agency's decision: great weight, due weight, and no weight. *See State v. Schwarz*, 2005 WI 34, ¶ 15, 279 Wis. 2d 223, 693 N.W.2d 703.

¶ 9. The parties dispute the level of deference we should accord the Commission's decision. We need not resolve this dispute because under any level of deference that we may accord the Commission's decision, we agree with the Commission that, under the only reasonable interpretation of the statute, Aggressive Metals was not an "employer" as defined by WIS. STAT. § 102.04(1)(b)1. or (2). on January 4, 2011. Therefore, Aggressive Metals was not subject to the Act when Noyce was injured.

*B. Aggressive Metals was not an "employer" under the Act when Noyce was injured*

¶ 10. This dispute centers on the proper interpretation of WIS. STAT. §§ 102.04(1)(b) and 102.05(1) and the application of these statutes to the undisputed facts of this case. When interpreting a statute, we begin with the statutory language. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271

Wis. 2d 633, 681 N.W.2d 110. "If the meaning of the statute is plain, we ordinarily stop the inquiry" and apply that meaning. *Id.* We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (quoted source omitted).

¶ 11. Noyce contends that Aggressive Metals was an "employer" as defined in Wis. Stat. § 102.04(1)(b)1. on the date of his injuries, and therefore, subject to the Act. In support, Noyce relies on *Stapleton v. Industrial Comm'n*, 249 Wis. 133, 139b, 26 N.W.2d 677 (1947) (*Stapleton II*), where our supreme court held that, under its interpretation of then existing Wis. Stat. §§ 102.04(2) and (3), and 102.05(2) (1943), an employer becomes subject to the Act immediately upon employing three or more employees. Noyce argues that this court is bound by this holding, and that applying this holding to this case, Aggressive Metals became an employer subject to the Act on the day that it hired Noyce in late December 2010. As a result, Noyce argues, Aggressive Metals was subject to the Act on January 4, 2011, the day Noyce was injured.

¶ 12. In response, Aggressive Metals contends that the plain language of the current version of Wis. Stat. § 102.04(1)(b)1. and 2. supports the Commission's interpretation that the Act did not apply to Aggressive

Metals when Noyce was injured and that *Stapleton II* does not control our interpretation of these statutes. We agree.

¶ 13. We begin with the statute's language. Under Wis. Stat. § 102.04(1)(b), an employer is defined, in pertinent part, as:

> 1. Every person who usually employs 3 or more employees for services performed in this state, whether in one or more trades, businesses, professions, or occupations, and whether in one or more locations.

> 2. Every person who usually employs less than 3 employees, provided the person has paid wages of $500 or more in any calendar quarter for services performed in this state. Such employer shall become subject on the 10th day of the month next succeeding such quarter.

¶ 14. It is undisputed that Aggressive Metals became an "employer," as defined by Wis. Stat. § 102.04(1)(b)2., on January 10, 2011. Pursuant to that subdivision, Aggressive Metals became an employer because it paid its employees more than $500 in the last quarter of 2010, and thus, under the language of the subdivision, became an employer "on the 10th day of the month next succeeding such quarter." § 102.04(1)(b)2. Whether Aggressive Metals was an employer six days earlier, on January 4, 2011, the day that Noyce suffered his injuries, requires that we interpret and apply Wis. Stat. § 102.04(1)(b)1., specifically the clause, "who usually employs 3 or more employees."

¶ 15. The statute does not define "usually." When possible, we give statutory language "its com-

mon, ordinary, and accepted meaning." *Kalal*, 271 Wis. 2d 633, ¶ 45. When a word is not defined in a statute, we may look to a recognized dictionary definition to determine the common and ordinary meaning of a word. *Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶ 14, 273 Wis. 2d 612, 682 N.W.2d 365. *BLACK'S LAW DICTIONARY* (10th ed. 2014) defines "usual" as "[o]rdinary; customary." *WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY* (unabridged) (1993) provides two definitions for "usually": (1) "by or according to habit or custom" and (2) "more often than not." Using these definitions of the word "usually" in WIS. STAT. § 102.04(1)(b)1., an "employer" is a person "who [ordinarily, customarily, or habitually] employs 3 or more employees" or "who [more often than not] employs 3 or more employees."

¶ 16. Applying the term "usually" according to these definitions to the facts of this case, Aggressive Metals was not an "employer" within the meaning of WIS. STAT. § 102.04(1)(b)1. when Noyce was injured. It is undisputed that Noyce was offered limited, short-term work as Aggressive Metals' third employee, and that Aggressive Metals had been operating with no more than two employees since the company started approximately ten months earlier. Noyce points to no evidence that Aggressive Metals employed three or more employees at any time prior to hiring Noyce, and our review of the record reveals that no such evidence exists. Based on the record before us, it is clear that Aggressive Metals did not ordinarily, customarily, or habitually employ three employees at the time Noyce was injured. Similarly, it cannot reasonably be argued that when Aggressive Metals took on Noyce as a third employee for a few days it met the definition of employing three employees more often than not. Thus,

Aggressive Metals was not an employer within the meaning of subdivision (1)(b)1. when Noyce suffered his work-related injury.

¶ 17. Noyce weakly argues that the word "usually" in Wis. Stat. § 102.04(1)(b)1. is vague, because "[t]here is no temporal limit placed on the term by the statute." Noyce does not sufficiently develop this argument. In the place of conducting a statutory analysis and providing legal support for this argument, Noyce offers only two hypothetical applications of the word "usually" without saying more. We decline to develop this into a full argument for Noyce, and therefore, we do not consider this argument further. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶ 27, 318 Wis. 2d 488, 770 N.W.2d 727 (we need not consider undeveloped arguments).

¶ 18. In sum, because Aggressive Metals was not an employer as defined in Wis. Stat. § 102.04(1)(b)1. and 2. on January 4, 2011, Aggressive Metals was not subject to the Act when Noyce sustained his work-related injuries on that date.

¶ 19. Noyce's primary argument against our plain language interpretation of Wis. Stat. § 102.04(1)(b) is based on the holding in *Stapleton II*, which in a different larger statutory context, held that an employer is subject to the Act at the moment that it hires three or more employees. *Stapleton II*, 249 Wis. at 139a-139b. As we now explain, the court's construction of the subsection in *Stapleton II* does not apply to the current statutory scheme.

¶ 20. As in this case, the narrow issue in *Stapleton v. Industrial Comm'n*, 249 Wis. 133, 23 N.W. 514 (1946), was whether the employer, Stapleton, was subject to the Worker's Compensation Act under the statutory scheme existing at that time. To make this

determination, the court was required to interpret and harmonize what appeared to be conflicting statutes in that statutory scheme, most of which no longer exist. The potential conflict was between WIS. STAT. § 102.04(2) (1943), which stated that an employer is defined as a person who "usually employs 3 or more employes," and WIS. STAT. § 102.05(1) and (2) (1943), which deemed an employer who employed three employees "at any time" to be subject to the Act, unless the employer elected in writing not to accept the provisions of the Act prior to that time. The court resolved the potential conflict by holding that "[i]mmediately upon the employment of three or more persons [an employer] becomes subject to the act, but at any time that [the employer] has less than three employees [the employer] can withdraw . . . ." *Stapleton II*, 249 Wis. at 139b (citation omitted). In reaching this conclusion, the *Stapleton II* court did not look to § 102.04(2) (1943), but instead focused on §§ 102.04(3) and 102.05(2) (1943). However, § 102.04(3) (1943) no longer exists, and the language that the court relied on in § 102.05(2) (1943) has been repealed.

¶ 21. The legislature amended WIS. STAT. §§ 102.04 and 102.05 (1943) when it enacted 1967 Wis. Act 350. All of the statutes on which the *Stapleton II* court relied were either substantially changed or repealed, except for then § 102.04(2), which is now § 102.04(1)(b). More to the point, the statutory language that the *Stapleton II* court was called on to interpret, and on which it relied in reaching its holding, was removed from §§ 102.04 or 102.05 (1943). Unlike in *Stapleton II*, we see no language in the current statutory scheme, nor does Noyce identify any such language, which would require the word "usually" in § 102.04(1)(b) to be read differently from its

common, ordinary, and accepted meaning, as explained above. Because of these substantial statutory changes to §§ 102.04 and 102.05 (1943) since *Stapleton II* was decided, our interpretation of § 102.04(1)(b) is not controlled by *Stapleton II. See International Paper Co. v. LIRC*, 2001 WI App 248, ¶ 16, 248 Wis. 2d 348, 635 N.W.2d 823 (prior cases decided by LIRC no longer control because the statutes "upon which they were based" were significantly amended).

¶ 22. We briefly address Noyce's other arguments as to why we should conclude that the holding in *Stapleton II* still controls. Noyce argues that in prior cases the Commission has interpreted the current version of WIS. STAT. § 102.04(1)(b) consistently with the holding in *Stapleton II* that an employer becomes subject to the Act immediately upon the employment of three or more people. In support, Noyce points to *Olson v. Todd Cassiani*, WC Claim 2009–033377 (LIRC June 6, 2013) and *Curtis v. R & M Decorating*, WC Claim 2006–009497 (LIRC May 21, 2008). This argument is easily rejected based on our analysis above of why our interpretation of § 102.04(1)(b) is not controlled by *Stapleton II.*

¶ 23. Noyce argues that the legislative history of WIS. STAT. §§ 102.04 and 102.05 indicates that the legislature did not intend to abrogate the *Stapleton II* court's holding. Noyce ignores a primary canon of statutory interpretation, namely that if a statute is unambiguous, as it is here, we generally do not resort to extrinsic evidence to interpret that statute. *See Kalal*, 271 Wis. 2d 633, ¶ 46. We acknowledge that reviewing courts may consider a statute's legislative history to support a plain language reading of a

statute, however, absent ambiguity, generally we do not look to legislative history. *Id.*, ¶ 51.

¶ 24. Finally, Noyce argues for a bright-line rule that would fulfill the stated purposes of the Act. Noyce urges us to interpret the pertinent provisions of WIS. STAT. § 102.04(1)(b) broadly and liberally "to effectuate their stated purpose." *See County of Dane v. LIRC*, 2009 WI 9, ¶ 33, 315 Wis. 2d 293, 759 N.W.2d 571. None of the cases that Noyce relies on in support of his broad construction of the worker's compensation statutes suggest that we abandon our obligation to interpret the words of a statute according to its plain language. The words themselves reveal the legislature's intent.

## CONCLUSION

¶ 25. Based on the above reasons, we conclude that Aggressive Metals was not subject to the Act on the date of Noyce's injuries. Accordingly, Aggressive Metals is not liable for compensation to Noyce for his work-related injuries under the Act, and is not required to reimburse the Fund for benefit payments made to Noyce for his injuries. We therefore affirm the order of the circuit court affirming the Commission's decision.

*By the Court.*—Order affirmed.