H. Elaine STIPETICH, Plaintiff-Appellant-Cross-Respondent,

v.

William J. GROSSHANS, in his official capacity as Administrator of the Division of Community Corrections of the Wisconsin Department of Corrections, and the Wisconsin Department of Corrections, Defendants-Respondents,

Eurial K. JORDAN, individually, Jo Winston, individually, Kenneth Kissinger, individually, and Tomas Garcia, individually, Defendants,

Stephen B. TUPPER, individually, Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 99–1110. Submitted on briefs January 11, 2000.—Decided April 6, 2000.*

## 2000 WI App 100

(Also reported in 612 N.W.2d 346.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *David E. Lasker* of *Lasker Law Offices, S.C.* of Madison.

On behalf of the defendants-respondents and defendant-respondent-cross-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Jennifer Sloan Lattis*, assistant attorney general.

Before Dykman, P.J., Eich and Deininger, JJ.

¶ 1. DYKMAN, P.J. In this employment discrimination case, H. Elaine Stipetich appeals from the part of an order granting summary judgment in favor of the respondents Stephen B. Tupper, William J. Grosshans and the Department of Corrections on her claims of sex discrimination, retaliation and due process violations under Title VII of the Civil Rights Act of

1964 and 42 U.S.C. § 1983. We conclude that Stipetich did not present sufficient evidence to establish a prima facie case of sex discrimination and retaliation. We also conclude that Stipetich did not demonstrate that she had been deprived of a property or liberty interest requiring procedural due process. Therefore, we affirm that part of the trial court's order granting summary judgment in favor of the respondents.

¶ 2. Tupper cross-appeals from the part of the order denying summary judgment on Stipetich's claim under § 1983 that he had violated her constitutional right to privacy. We agree that Tupper was entitled to qualified immunity on that claim and reverse that part of the trial court's order.

## I. Background

¶ 3. In 1983, Stipetich began working as a probation and parole officer in the Janesville office of the Wisconsin Department of Corrections' (DOC) Division of Probation and Parole. She was supervised by Tupper, a DOC field supervisor. From 1983 to 1991, Tupper found Stipetich's work to be excellent in his written appraisals.

¶ 4. In early 1990, Tupper suspected that Stipetich and another officer in the Janesville office were having an affair. Although he alleged that the affair caused a change in Stipetich's behavior, he found her work to be satisfactory when he audited her cases in February 1991. Stipetich alleges that Tupper began to discriminate against her on the basis of her sex. Stipetich contends that Tupper started closely scrutinizing her work and behavior, tried to discredit her among her co-workers, and forbade her from discussing her personal life with others in the office. After complaining to Tupper about his behavior for several months, Stipe-

tich filed a union grievance and an affirmative action complaint with DOC on November 4, 1991.

¶ 5. On November 22, 1991, Tupper began an audit of Stipetich's entire case load. Tupper concluded that Stipetich was performing unsatisfactorily in several aspects of her job. On January 15, 1992, Stipetich filed a discrimination charge with the Wisconsin Personnel Commission against Tupper. On January 27, 1992, Eurial Jordan, the division administrator for the Division of Probation and Parole, wrote to Stipetich, informing her that she was required to undergo a psychological evaluation with a doctor chosen by the division in order to continue her employment and was suspended indefinitely with pay[1] pending the results of the evaluation.

¶ 6. On January 29, 1992, Stipetich underwent an evaluation with Dr. Eric Hummel, the psychologist chosen by the division. In the report he sent to Jordan and Tupper, Hummel explained that Stipetich signed only a limited release of information, allowing him to relay only a basic opinion of her ability to work. Hummel concluded that Stipetich was able to perform many of her job duties, but was limited in her ability to work with Tupper and her co-workers, and in some of her interactions with clients. Hummel suggested that obtaining an expanded release of information from Stipetich would be useful. At the insistence of the division, Stipetich provided Hummel with a full release. Hummel sent another letter to Jordan, in which he

---

[1] In her affidavit, Stipetich states that she was suspended without pay. However, Stipetich's amended complaint, Tupper's affidavit and Jordan's affidavit all state that she was suspended with pay. In her brief, Stipetich also states that she was suspended with pay and we conclude that Stipetich's statement in her affidavit was inadvertent.

relayed more of the information he gathered in his evaluation, including information on Stipetich's family background that she considered extremely personal and embarrassing. Hummel stated that Stipetich had a "reasonable chance" of performing her duties as a probation and parole officer if she was transferred to another office and that he had "significant doubts" about Stipetich's ability to work effectively under Tupper's supervision.

¶ 7. On March 4, 1992, Jordan wrote to Stipetich, explaining that she could choose between reassignment to a probation and parole office in Elkhorn or Madison, or have her employment terminated. The next day, she was given the option of transferring to a second office in Madison. On March 6, 1992, Stipetich wrote to Jordan to accept the transfer to the second office in Madison under protest, since she was not given the option of remaining in the Janesville office or transferring to nearby Beloit.

¶ 8. In 1997, Stipetich filed a complaint in the Dane County Circuit Court, naming the DOC, Tupper, Grosshans, in his official capacity as the administrator of the Division of Community Corrections, Jordan and three other individuals as defendants. Stipetich alleged that the defendants had subjected her to sex discrimination and retaliation in violation of 42 U.S.C. § 1983[2] and Title VII of the Civil Rights Act of 1964.[3]

---

[2] 42 U.S.C. § 1983 (1988) provided:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable

She also alleged that the defendants had violated her right to privacy, due process, and equal protection under the First, Ninth, Tenth and Fourteenth Amendments to the United States Constitution and § 1983. Stipetich dropped her claims against Jordan and the three other individuals. The trial court dismissed Stipetich's claims against the DOC under § 1983, against Tupper under Title VII, and dismissed all of Stipetich's claims for damages against Grosshans. Therefore, Stipetich's remaining claims were against the DOC under Title VII, against Tupper under § 1983, and against Grosshans under Title VII and § 1983 only for injunctive relief in his official capacity.

---

exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[3] The applicable sections of Title VII are 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a). 42 U.S.C. § 2000e–2(a) (1988) provided:

> It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–3(a) (1988) provided:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member therof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

¶ 9. The trial court granted summary judgment in favor of the DOC, Tupper and Grosshans (respondents) on all of Stipetich's claims except for her § 1983 claim that requiring her to provide a full release of information to Dr. Hummel invaded her privacy. The court concluded that there was a material issue of fact as to whether Jordan and Tupper had authority to require Stipetich to provide the full release, and as to Tupper's role in requiring Stipetich to do so. Stipetich appeals. The respondents filed a motion to reconsider, arguing that the trial court should have granted summary judgment in their favor on the invasion of privacy claim because they were entitled to qualified immunity. Rather than ruling on the motion to reconsider, the trial court decided that the issue could be addressed by this court on cross-appeal. Therefore, Tupper cross-appeals.[4]

## II. Analysis

¶ 10. We review a trial court's decision to grant or deny summary judgment de novo, using the same methodology as the trial court. *See Katzman v. State Ethics Bd.*, 228 Wis. 2d 282, 290, 596 N.W.2d 861 (Ct. App. 1999). We need not repeat the summary judgment methodology here, except to note that summary judg-

---

[4] We concluded that the trial court's order granting summary judgment in part was final and appealable as to Grosshans and the DOC. We concluded that the order was not final as to Tupper because Stipetich's invasion of privacy claim against Tupper was still pending. We granted Stipetich leave to appeal the trial court's order granting summary judgment in favor of Tupper, and we granted Tupper leave to appeal the denial of his qualified immunity defense on the claim of invasion of privacy.

ment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2) (1997–98); *Rufener v. State Farm Fire & Cas. Co.*, 221 Wis. 2d 500, 504, 585 N.W.2d 696 (Ct. App. 1998), *review denied*, 221 Wis. 2d 656, 588 N.W.2d 633 (Wis. Oct. 14, 1998) (No. 98–0086). We must view the evidence in the light most favorable to the non-moving party. *See Rufener*, 221 Wis. 2d at 504.

## A. Appeal

### 1. Sex Discrimination and Retaliation

¶ 11. Stipetich argues that the trial court erred in granting summary judgment in favor of the respondents on her claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. She contends that she made out a prima facie case of sex discrimination and retaliation, and that there remain material issues of fact to be determined. On questions of federal statutory interpretation, we are bound by decisions of the United States Supreme Court, but not by decisions of the lower federal courts. *See Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 306–07, 340 N.W.2d 704 (1983). However, because we find the Seventh Circuit's analysis of the applicable legal standards in employment discrimination cases on summary judgment under Title VII and § 1983 to be persuasive, we will adopt that court's reasoning for our present analysis.

¶ 12. In employment discrimination cases under Title VII and § 1983, the plaintiff must prove that he or she has been the victim of intentional discrimination.

81

*See Bruno v. City of Crown Point*, 950 F.2d 355, 361 (7th Cir. 1991). In summary judgment cases, there is no genuine issue of material fact if the record as a whole, considered in the light most favorable to the non-moving party, would not allow a rational trier of fact to find for the non-moving party. *See Flores v. Preferred Technical Group*, 182 F.3d 512, 514 (7th Cir. 1999). Therefore, in order to avoid summary judgment, Stipetich must supply sufficient evidence to allow a rational jury to find that she was subjected to intentional discrimination. *See Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1140 (7th Cir. 1998).

¶ 13. In employment discrimination or retaliation cases, a plaintiff can present sufficient evidence to avoid summary judgment in two ways: (1) by presenting enough direct or circumstantial evidence to demonstrate that the employer intended to discriminate; or (2) by presenting indirect evidence of intentional discrimination under what has been termed the "*McDonnell Douglas* burden-shifting approach." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722–23 (7th Cir. 1998); *see Smart v. Ball State Univ.*, 89 F.3d 437, 439 (7th Cir. 1996), *cert. denied*, 119 S. Ct. 167 (1998); *Pilditch v. Board of Educ. of Chicago*, 3 F.3d 1113, 1116 (7th Cir. 1993). Stipetich does not contend that she produced direct or circumstantial evidence of respondents' intent to discriminate or retaliate against her.

¶ 14. Under the *McDonnell Douglas* burden-shifting method for proving discrimination by indirect evidence, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff

establishes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the action it took. *See id.* If the employer meets its burden the plaintiff must then have the opportunity to demonstrate that the legitimate reason offered by the employer was merely a pretext for discrimination. *See id.* at 804.

¶ 15. To establish a prima facie case of sex discrimination, the plaintiff must demonstrate that: (1) he or she belongs to a protected class; (2) he or she was performing his or her job satisfactorily; (3) he or she suffered an adverse employment action; and (4) the employer treated a similarly-situated employee not in the protected class more favorably. *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 863 (7th Cir. 1997). To establish a prima facie case of retaliation under Title VII or § 1983, the plaintiff must demonstrate that: (1) he or she engaged in activity protected under Title VII, or under the Constitution or federal law for § 1983 cases; (2) he or she suffered an adverse employment action after engaging in that activity; and (3) there exists a causal connection between his or her participation in the protected activity and the adverse employment action. *See Smart*, 89 F.3d at 440; *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 481–82 (7th Cir. 1995).

¶ 16. We conclude that the trial court properly granted summary judgment to the respondents on Stipetich's sex discrimination and retaliation claims. Stipetich did not present sufficient evidence to allow a reasonable trier of fact to conclude that she established the prima facie case required under *McDonnell Douglas*. Viewed in the light most favorable to Stipetich, there is no evidence that she suffered an adverse

employment action as required in both sex discrimination and retaliation cases.

¶ 17. An adverse employment action is not limited only to a loss of employment or a reduction of pay or monetary benefits. *See Collins v. Illinois*, 830 F.2d 692, 703 (7th Cir. 1987). However, an adverse employment action:

> must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). A transfer to another position that is purely lateral, "that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).

¶ 18. In *Collins*, the Seventh Circuit concluded that the plaintiff suffered an adverse job action where she was transferred to another position even though she did not face a reduction in salary or monetary benefits because her "job responsibilities and accouterments of employment were altered." *Collins*, 830 F.2d at 696, 704. The plaintiff was transferred from a job she enjoyed as a library consultant to a new job where: her supervisors were unsure of her responsibilities; she no longer had her own office, but was instead placed at a desk outside her supervisor's office

where a receptionist would normally sit; she no longer had a telephone to use; and she was no longer allowed to have business cards or to be listed in professional publications as a library consultant. *See id.* at 704.

¶ 19. Stipetich did not produce evidence that she suffered negative treatment that rises to the level of an adverse job action. There is no evidence that her transfer to the Madison office caused her to lose any pay or benefits. In addition, unlike the plaintiff in *Collins*, Stipetich's transfer appears to be "purely lateral." Although the environment in which she worked changed, Stipetich produced no evidence that her job responsibilities changed substantially or that she lost any of the "accouterments" of her position that might signal that she was being demoted like the plaintiff in *Collins*.[5] Stipetich had to travel from Janesville to Madison to work, but she was reimbursed $4,000 for her travel expenses. She was also given the option of transferring to Elkhorn, which is closer in distance to Janesville. We have also found no authority demonstrating that Stipetich's suspension *with pay* amounted to an adverse job action under Title VII or § 1983.

¶ 20. Stipetich contends that she suffered an adverse job action because she was denied several promotions as a result of the respondents' discriminatory conduct. We disagree. To establish a prima facie case

---

[5] Stipetich asserts that she lost a "prestigious job opportunity" before she was transferred when Tupper trained another woman to take over running a domestic violence group from Stipetich. We conclude that such an alteration of job responsibilities does not amount to an adverse employment action. *See Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993).

for failure to promote, a plaintiff must demonstrate that: (1) he or she applied for a promotion; (2) he or she was entitled to the promotion; and (3) the person who received the promotion had the same or lesser qualifications. *See Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998). In her affidavit, Stipetich describes another woman who advanced in the DOC more quickly than she, but Stipetich provides no specific evidence of promotions she applied for that she was entitled to and that were given to someone else with the same or less qualifications.

██

¶ 21. Stipetich also asserts that Tupper intentionally created a hostile work environment by excessively scrutinizing her work, discrediting her with co-workers and forbidding her from discussing her personal life in the office. She argues that this creation of a hostile work environment amounts to an adverse employment action under *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993), *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986), and *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994). Under *Harris* and *Meritor*, a plaintiff can establish a Title VII violation by demonstrating "that discrimination based on sex has created a hostile or abusive work environment." *Meritor*, 477 U.S. at 66. "Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality." *Id.* at 67 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 902 (11th Cir. 1982)).

██

¶ 22. We do not agree that Tupper intentionally created a hostile work environment as prohibited by Title VII because he did not sexually harass Stipetich.

Accepting Stipetich's allegations as true, she has not produced any evidence that she was the victim of sexual harassment as contemplated in *Harris*, *Meritor* or *Dey*. *Harris*, 510 U.S. at 19 (plaintiff subjected to gender-based insults and sexual innuendoes); *Meritor*, 477 U.S. at 60 (plaintiff subjected to sexual advances, demands for sexual favors, and sexual abuse); *Dey*, 28 F.3d at 1449 (plaintiff subjected to repeated sexual comments, gestures and innuendoes).

## 2. Due Process Violation

¶ 23. Stipetich also asserts that she established a claim against Tupper under § 1983 for violating her right to due process under the Fourteenth Amendment to the United States Constitution. She contends that Tupper deprived her of her constitutionally protected rights to remain employed at the Janesville office and to preserve her reputation.

¶ 24. In order to demonstrate a right to procedural due process, a person must establish that a constitutionally protected property or liberty interest is implicated. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Property interests are not created by the Constitution, but are created and defined "by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. In order to "have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it." *Id.* The liberty interests protected by procedural due process are not specifically defined. *See id.* at 572. A person's reputation falls

within the scope of property or liberty interests protected by procedural due process because when "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her]," due process is essential. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). However a person's reputation is protected by procedural due process only when damage to the reputation is accompanied by the alteration or elimination of a right or status previously recognized under state law. *See Paul v. Davis*, 424 U.S. 693, 707–711 (1976).

¶ 25. We conclude that the trial court properly granted summary judgment on Stipetich's due process claim because Stipetich did not produce sufficient evidence to allow a fact-finder to conclude that she had been deprived of a constitutionally protected property or liberty interest. Stipetich did not lose her job when she was transferred to Madison and she did not demonstrate that she had anything but a personal interest in remaining at the Janesville office. She produced no evidence that she was entitled to remain in Janesville based on an existing rule or law, or an established understanding with her employer. Stipetich was not entitled to procedural due process to protect her reputation because any damage caused to her reputation was not accompanied by the elimination or alteration of a right or status recognized by state law.

## B. Cross-Appeal

¶ 26. Tupper argues that the trial court should have granted summary judgment in his favor on Stipetich's claim under § 1983 for invasion of privacy because he was entitled to qualified immunity.

Whether a public official is entitled to qualified immunity is a question of law that we decide de novo. *See Penterman v. Wisconsin Elec. Power Co.*, 211 Wis. 2d 458, 468, 565 N.W.2d 521 (1997). "Qualified immunity protects government officials from civil liability if their conduct does not violate a person's clearly established constitutional rights." *Id.* at 469. Although qualified immunity is an affirmative defense, the plaintiff has the burden of demonstrating "by closely analogous case law, that the defendant has violated a clearly established constitutional right." *Id.* We must determine "whether a reasonable state official could have believed his or her act was constitutional 'in light of clearly established law and the information [he or she] possessed' at the time of the official's action." *Id.* at 470 (quoting *Burkes v. Klauser*, 185 Wis. 2d 308, 326, 517 N.W.2d 503 (1994)).

¶ 27. We agree that the trial court should have granted summary judgment because Tupper was entitled to qualified immunity on Stipetich's § 1983 invasion of privacy claim. There is a constitutional right to privacy that includes "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). However, Stipetich has not demonstrated "by closely analogous case law" existing at the time, that Tupper violated her federal constitutional right to privacy by requiring her to provide a complete release of information to Dr. Hummel.

¶ 28. The only analogous case law that Stipetich provides, applicable at the time of Tupper's actions, is *Daury v. Smith*, 842 F.2d 9 (1st Cir. 1988), and *Pesce v. J. Sterling Morton High Sch., Dist. 201*, 830 F.2d 789 (7th Cir. 1987). However, in *Pesce*, the Seventh Circuit held that a requirement that a school psychologist

promptly report suspected child abuse to a state agency did not unconstitutionally violate any federal right of confidentiality. *Id.* at 798. In *Daury,* the First Circuit held that a school committee did not violate a school administrator's constitutional rights when it required him to see a psychiatrist before returning to work. *Daury,* 842 F.2d at 14. Stipetich points out that the First Circuit hinted that it might have held differently if the psychiatrist had provided confidential information on the plaintiff's personal or family history to the school committee, *see id.* at 15—the same type of information Dr. Hummel provided to Jordan and Tupper. However, the fact that the First Circuit might have held differently in circumstances similar to Stipetich's does not mean that Tupper violated a clearly established constitutional right. In the absence of relevant authority actually making such a holding, Tupper was entitled to qualified immunity.

¶ 29. For the reasons discussed above, we affirm those parts of the trial court's order granting summary judgment in favor of the respondents. We reverse the part of the order denying summary judgment on Stipetich's claim under § 1983 for invasion of privacy.

*By the Court.*—Order affirmed in part and reversed in part.