# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1877-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Lazaro Ozuna, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 369 Wis. 2d 224, 880 N.W.2d 183
(2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | June 22, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 11, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Walworth |
|   JUDGE: | Kristine E. Drettwan |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs and oral argument by *Alisha McKay*, assistant state public defender, with whom on the briefs was *Colleen Marion*, assistant state public defender.

For the plaintiff-respondent there was a brief and oral argument by *Scott E. Rosenow*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

An amici curiae brief was filed on behalf of Legal Action of Wisconsin, Inc. by *Kori L. Ashley, Christine Donahoe, Susan*

*Lund, Sheila Sullivan,* and *Legal Action of Wisconsin, Inc.,* Milwaukee.

2017 WI 64

No. 2015AP1877-CR
(L.C. No. 2013CM458)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

  **v.**

**Lazaro Ozuna,**

      **Defendant-Appellant-Petitioner.**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**FILED**

**JUN 22, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1  MICHAEL J. GABLEMAN, J.  We review an unpublished decision of the court of appeals, State v. Ozuna, No. 2015AP1877-CR, unpublished slip op. (Wis. Ct. App. April 13, 2016), affirming the Walworth County circuit court's order[1] denying expungement of the defendant's misdemeanor convictions.

¶2  We affirm the decision of the court of appeals and hold that the circuit court properly concluded that the defendant was not entitled to expungement. We do so because the

---

[1] The Honorable Kristine E. Drettwan, presiding.

defendant did not meet the statutory requirements for expungement. Specifically, in order to be entitled to expungement, a probationer must "satisf[y] the conditions of probation." Wis. Stat. § 973.015(1m)(b) (2013-14).[2] In this case, when the Department of Corrections ("DOC") notified the circuit court that the defendant had completed probationary supervision, it simultaneously notified the court that the defendant had violated the court's expressly ordered condition that he neither possess nor consume alcohol. Consequently, the circuit court ruled that the defendant was not entitled to expungement, and the court of appeals affirmed. We affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶3 On November 20, 2013, the Walworth County district attorney's office charged Lazaro Ozuna with one count of criminal damage to property contrary to Wis. Stat. § 943.01(1) (2011-2012) and one count of disorderly conduct contrary to Wis. Stat. § 947.01(1) (2011-2012), both misdemeanors. Ozuna was 17 years old at the time these charges were filed.

¶4 On May 27, 2014, the circuit court held a plea and sentencing hearing,[3] at which Ozuna pled guilty to both counts. The court accepted Ozuna's guilty plea and imposed a sentence of 120 days' incarceration, but the court stayed the sentence and

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[3] The Honorable James L. Carlson, presiding.

placed Ozuna on a period of probationary supervision for 12 months. As one of the conditions of his probation, the court ordered Ozuna "[n]ot to possess or consume alcohol, illegal drugs or paraphernalia."

¶5 The court further determined that Ozuna's conviction was eligible for expungement under Wis. Stat. § 973.015 so long as Ozuna satisfied the conditions of probation. The court stated, "I will allow expungement if there is no violation of probation . . . ." The court asked Ozuna if he understood that he would have to comply with the conditions of probation and that the convictions "could be on your record unless you complete the sentence[4] successfully and get it expunged; do you understand that?" Ozuna answered, "Yes, sir."

¶6 Ozuna was placed on probation under the supervision of DOC for a term of 12 months. After Ozuna was discharged from probation, DOC filed a form with the circuit court on June 5, 2015, entitled "Verification of Satisfaction of Probation Conditions for Expungement." On that form, the probation agent had marked a box labeled "The offender has successfully completed his/her probation." Further down on the form,

---

[4] We note that probationary supervision, commonly referred to as "probation," is not itself a sentence; rather, it is an alternative to sentencing. State v. Horn, 226 Wis. 2d 637, 647, 594 N.W.2d 772 (1999). However, the expungement statute defines the "successful completion of the sentence" so as to encompass probation. See Wis. Stat. § 973.015(1m)(b). Probation is therefore considered a "sentence" for purposes of the expungement statute. State v. Matasek, 2014 WI 27, ¶36, 353 Wis. 2d 601, 846 N.W.2d 811.

3

however, the agent had marked the box labeled, "All court ordered conditions have not been met." The agent inserted the following explanation: "[Ozuna] [f]ailed to comply with the no alcohol condition. Lake Geneva PD went to Harbor Shores Hotel for noise complaint. Mr. Ozaro [sic] cited for underage drinking (102 pbt [sic]) and marijuana odor in the halls."

¶7 On June 12, 2015, the circuit court entered an order denying expungement of Ozuna's record. The order noted that Ozuna had failed to fulfill the obligations of his probation. Ozuna appealed the circuit court's order, and the court of appeals affirmed the circuit court. The court of appeals concluded that "Ozuna was entitled to expungement only if he successfully completed his sentence. Ozuna did not do so because he did not satisfy the conditions of probation." Ozuna, unpublished slip op., ¶11. The court of appeals noted that the "State claims——and the DOC form confirms——that Ozuna violated the no alcohol condition of his probation. Nowhere in the briefs does Ozuna contest this crucial fact." Id., ¶9. For these reasons, the court of appeals affirmed the circuit court's order denying expungement.

¶8 Ozuna petitioned this court for review, which we granted on September 15, 2016.

## II. STANDARD OF REVIEW

¶9 This case requires us to interpret the expungement statute, Wis. Stat. § 973.015, which is a question of statutory interpretation that we review de novo. State v. Hemp, 2014 WI 129, ¶12, 359 Wis. 2d 320, 856 N.W.2d 811. The application of a

4

statute to undisputed facts is also a question of law for our independent review, benefiting from the analyses of the circuit court and court of appeals. State v. Popenhagen, 2008 WI 55, ¶32, 309 Wis. 2d 601, 749 N.W.2d 611.

### III. DISCUSSION

¶10 We begin by setting forth the relevant statutory requirements for expungement and discussing the circuit court's authority to deny expungement. We then apply these principles to the facts of this case, and we hold that, because Ozuna did not satisfy the conditions of probation, the circuit court properly denied expungement of his conviction. Finally, we address Ozuna's procedural due process argument, and we conclude that Ozuna's rights were not violated in this case.

### A. A Probationer Must Satisfy the Conditions of Probation In Order To Be Entitled to Expungement

¶11 The Wisconsin statutes empower a circuit court to order certain criminal offenses to be expunged from a person's record, if the offender was younger than 25 at the time of the commission of the offense.[5] The overarching legislative purpose

---

[5] Section 973.015(1m)(a)1. provides, in relevant part, that

when a person is under the age of 25 at the time of the commission of an offense . . . for which the maximum period of imprisonment is 6 years or less, the court may order at the time of sentencing that the record be expunged upon successful completion of the sentence if the court determines the person will benefit and society will not be harmed by this disposition.

of the expungement statute is to provide "a break to young offenders who demonstrate the ability to comply with the law." Hemp, 359 Wis. 2d 320, ¶20 (quoting State v. Leitner, 2002 WI 77, ¶38, 253 Wis. 2d 449, 646 N.W.2d 341). A circuit court may order expungement "if the court determines the person will benefit and society will not be harmed by this disposition." Wis. Stat. § 973.015(1m)(a)1. Under the statutory scheme, the determination of a defendant's eligibility for expungement must be made at the time of sentencing. State v. Matasek, 2014 WI 27, ¶45, 353 Wis. 2d 601, 846 N.W.2d 811.

¶12 If the circuit court determines that the defendant is eligible for expungement under Wis. Stat. § 973.015(1m)(a), "the plain language of the statute indicates that once the defendant successfully completes his sentence, he has earned, and is automatically entitled to, expungement." Hemp, 359 Wis. 2d 320, ¶23.[6] The statute provides a three-part definition of what it means to "successfully complete the sentence" for purposes of earning expungement: "A person has successfully completed the

_____

[6] The statute provides, in relevant part, that

> A person has successfully completed the sentence if the person has not been convicted of a subsequent offense and, if on probation, the probation has not been revoked and the probationer has satisfied the conditions of probation. Upon successful completion of the sentence the detaining or probationary authority shall issue a certificate of discharge which shall be forwarded to the court of record and which shall have the effect of expunging the record.

Wis. Stat. § 973.015(1m)(b).

6

sentence if [1] the person has not been convicted of a subsequent offense and, if on probation, [2] the probation has not been revoked and [3] <u>the probationer has satisfied the conditions of probation</u>." § 973.015(1m)(b) (emphasis added). "If a probationer satisfies these three criteria, he has earned expungement, and is automatically entitled to expungement of the underlying charge." <u>Hemp</u>, 359 Wis. 2d 320, ¶23.

¶13 We emphasize that, in order to be entitled to expungement, the probationer must meet all three of the statutory criteria, including satisfying "all the conditions of probation." <u>Id.</u>, ¶22. Because the three criteria are distinct, we reject Ozuna's notion that a probationer has "satisfied the conditions of probation" under Wis. Stat. § 973.015(1m)(b) simply because his probation was not revoked. Whether a probationer's conduct was adequate to avoid revocation is a question separate and distinct from whether the probationer "has satisfied all the conditions of probation."[7] <u>Hemp</u>, 359 Wis. 2d 320, ¶22. To "satisfy" a condition or obligation is to meet or fulfill it, not merely to avoid the penalty for violating it. <u>See</u> <u>Satisfy</u>, <u>Webster's Third New International Dictionary</u> 2017 (2002) ("to conform to (accepted criteria or requirements): fulfill, meet"). Therefore, the mere fact that a

---

[7] Revocation is a discretionary decision. When a violation of probation occurs, DOC regulations permit the agent to counsel the probationer, issue a warning, or choose another alternative to revocation. <u>See</u> Wis. Admin. Code § DOC 331.03(2)(b) (July 2013).

probationer has completed the term of probationary supervision without revocation does not necessarily establish that the probationer has also satisfied the conditions of probation.

B. The Court May Deny Expungement if a Probationer Does Not Satisfy the Conditions of Probation

¶14 Although the expungement statute puts the onus on DOC to determine whether a probationer has satisfied the conditions of probation and to notify the court when that occurs,[8] a court has no duty to expunge a probationer's record if the probationer has not satisfied the conditions of probation. This is so because a person's statutory entitlement to expungement depends not on whether the court receives a particular notice from DOC, but on whether the probationer meets all of the statutory criteria for the "successful completion of the sentence." See Wis. Stat. § 973.015(1m)(b) (providing that only "[u]pon successful completion of the sentence" shall a DOC-forwarded certificate of discharge "have the effect of expunging the

---

[8] As we recognized in State v. Hemp, 2014 WI 129, 359 Wis. 2d 320, 856 N.W.2d 811, a probationer who has met all the requirements of Wis. Stat. § 973.015(1m)(b) and is therefore entitled to expungement has no duty to notify the court of that fact; that duty rests with DOC as the probationary authority. See id., ¶30. DOC policy is in accord with this understanding. Its Electronic Case Reference Manual requires that, "[w]ithin 10 days following the discharge date, the agent shall forward information to the court indicating whether or not the eligible offender has successfully completed probation." Wisconsin DOC Electronic Case Reference Manual, Procedures Prior to Discharge: Expungement, § .04 (effective May 1, 2015) (available at http://doc.helpdocsonline.com/case-closing/transition/status-change).

record"). In Hemp, we held that Wis. Stat. § 973.015(1m)(b) provides for a "self-executing" expungement process, in which "the detaining or probationary authority must forward the certificate of discharge to the court of record upon the individual defendant's successful completion of his sentence and at that point the process of expungement is self-executing." Hemp, 359 Wis. 2d 320, ¶25 (emphasis added). The terms of the statute provide that this self-executing process is triggered only "[u]pon successful completion of the sentence," as the statute defines that term in § 973.015(1m)(b). "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." State v. Pratt, 36 Wis. 2d 312, 317, 153 N.W.2d 18 (1967) (internal quotation marks omitted). Therefore, under the expungement statute, it is proper for the circuit court to deny expungement if a defendant has not met all three criteria for the "successful completion of the sentence" under Wis. Stat. § 973.015(1m)(b), including satisfying the conditions of probation.[9]

---

[9] We note that, in this instance, Ozuna does not contest the factual determination that he consumed alcohol while on probation, thereby violating one of the conditions of his probation. This case is therefore not the proper vehicle in which to set forth the procedures a court is to follow when such factual matters are disputed. See State v. Smith, 2012 WI 91, ¶62 n.19, 342 Wis. 2d 710, 817 N.W.2d 410 (noting that this court "does not issue advisory opinions or address hypothetical facts"). We note our confidence in the ability of our circuit courts to resolve such matters fairly, a confidence informed by our knowledge that they routinely do just that.

9

¶15 This conclusion is not in conflict with our holding in Hemp. Although we stated in Hemp that expungement occurs automatically when DOC "forwards a certificate of discharge to the court of record," Hemp, 359 Wis. 2d 320, ¶36, we were resting on the premise that satisfaction of the conditions of probation is an indispensable prerequisite to a defendant's entitlement to expungement. Id., ¶¶22-23. It was because "Hemp satisfied all the conditions of probation," we explained, that his "successful completion of probation automatically entitled him to expungement of his conviction." Id., ¶24. Therefore, Hemp reinforces our understanding that a probationer's entitlement to expungement turns on whether the probationer "has satisfied the conditions of probation," as is required by Wis. Stat. § 973.015(1m)(b).

¶16 In Hemp, DOC forwarded Hemp's certificate of discharge to the court, and there was no dispute that Hemp had successfully completed probation as defined in Wis. Stat. § 973.015(1m)(b). "The record clearly indicates Hemp successfully completed probation," we concluded, because Hemp was not convicted of any subsequent offense while on probation, his probation was not revoked, and "Hemp satisfied all the conditions of probation." Hemp, 359 Wis. 2d 320, ¶24. In such a scenario, expungement was "required by statute" and the clerk of the circuit court accordingly had a duty to expunge the record upon receiving a copy of the certificate of discharge from DOC. Id., ¶33 n.11 (quoting SCR 72.06). But Hemp does not control a case where DOC informs the circuit court that the

10

probationer violated the court-ordered conditions of probation. In such a case, where one of the statutory requirements for the "successful completion of the sentence" under § 973.015(1m)(b) has not been met, the probationer has no entitlement to expungement and the self-executing process we described in Hemp does not occur.

¶17 Our emphasis on the language of the statute is also in accord with our interpretation of the probation statutes in an analogous context. In State ex rel. Greer v. Wiedenhoeft, 2014 WI 19, 353 Wis. 2d 307, 845 N.W.2d 373, where DOC issued a certificate of discharge from probation before the term of probation had expired, we held that such certificate did not have the effect of discharging the probationer. Id., ¶¶41, 51. The statutes provide that a certificate of discharge is issued "[w]hen the period of probation for a probationer has expired," Wis. Stat. § 973.09(5), but the defendant relied on two court of appeals decisions which suggested that the issuance of a certificate was the controlling event that effectuated discharge. Id., ¶42. We rejected this argument, explaining that "[n]either decision stands for the proposition that an erroneously issued discharge certificate can defeat a valid sentence imposed by a circuit court." Id. The certificate could not trump the statute. Similarly, in the expungement context, the simple fact that DOC forwards a certificate of discharge or other form to the circuit court does not, by itself, establish an entitlement to expungement if the record

demonstrates that the probationer has not met the prerequisites under Wis. Stat. § 973.015(1m)(b).

## C. The Circuit Court Properly Denied Expungement

¶18 Here, there was never any dispute about the underlying facts in the record. DOC submitted a form to the court which showed that Ozuna had violated one of the court-ordered conditions of his probation. On the form, the probation agent checked a box marked "All court ordered conditions have <u>not</u> been met." The agent noted the nature of the violation, namely, that Ozuna "[f]ailed to comply with the no alcohol condition," because he was "cited for underage drinking." Ozuna has never made any suggestion that that he did not, in fact, engage in this conduct during the term of probation.

¶19 These facts demonstrate that Ozuna did not meet the criteria for expungement, because he did not "satisf[y] the conditions of probation." Wis. Stat. § 973.015(1m)(b). According to his probation agent, Ozuna engaged in underage drinking in spite of the circuit court's command to refrain from consuming alcohol. Based on this clear violation of one of the court-ordered conditions of probation, Ozuna did not satisfy the

conditions of probation. Therefore, the circuit court properly denied expungement of Ozuna's record.[10]

¶20 Ozuna disagrees, arguing that the "fact that [his] agent forwarded the Verification Form to the circuit court communicates her determination that [he] met the requirements" for expungement. However, looking beyond the title of the form ("Verification of Satisfaction of Probation Conditions for Expungement") to its substance reveals that DOC determined Ozuna had violated one of the court-ordered conditions of probation. Although we held in Hemp that a court has no discretion to deny expungement if a probationer "successfully completed probation and his probationary authority forwarded his certificate to the court of record," Hemp, 359 Wis. 2d 320, ¶41 (emphasis added), there was no dispute in Hemp that the probationer had, in fact, met the statutory requirements for the successful completion of probation, including satisfying all the conditions of probation, id., ¶24. Nothing in Hemp dictates that the mere receipt of a form from DOC stating that the probationer "successfully completed" probation automatically entitles the probationer to expungement where, as here, the very same form contains a contradictory determination by DOC that the probationer violated

---

[10] It appears that Ozuna also failed to satisfy the monetary conditions of probation, and he argues that it would violate equal protection "to deny expungement to probationers who cannot afford to satisfy monetary conditions during supervision." We need not reach this argument, because we conclude that Ozuna's undisputed violation of the no-alcohol condition was sufficient to establish that he was not entitled to expungement.

13

one of the court-ordered conditions of probation. Because Ozuna did not satisfy the court-ordered condition that he abstain from alcohol while on probation, his reliance on Hemp is unavailing.

### D. Ozuna's Due Process Rights Were Not Violated

¶21 Finally, we turn to Ozuna's argument that the circuit court deprived him of his constitutional right to procedural due process by denying expungement without notice and an opportunity to be heard. We conclude that Ozuna's due process rights were not violated.

¶22 "The Fourteenth Amendment to the United States Constitution and art. I, § 1 of the Wisconsin Constitution prohibit government actions that deprive any person of life, liberty, or property without due process of law." Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶80, 237 Wis. 2d 99, 613 N.W.2d 849. The first step in a procedural due process analysis is to "examine whether the person has established that a constitutionally protected property or liberty interest is at issue." Id.

¶23 Where a liberty interest has been "initially recognized and protected by state law, . . . the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." Paul v. Davis, 424 U.S. 693, 710-11 (1976). We note that "[r]eputation by itself is neither liberty nor property within the meaning of the due process clause of the fourteenth amendment." Weber v. City of Cedarburg, 129 Wis. 2d 57, 73, 384 N.W.2d 333 (1986). Rather, "a person's reputation is protected

14

by procedural due process only when damage to the reputation is accompanied by the alteration or elimination of a right or status previously recognized by state law." Stipetich v. Grosshans, 2000 WI App 100, ¶24, 235 Wis. 2d 69, 612 N.W.2d 346. "In such a case, due process would accord an opportunity to refute the charge . . . ." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573 (1972). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." Id. at 573 n.12.

¶24 Here, Ozuna argues that he had a protected liberty interest in expungement of his record because the circuit court ordered, at the time of Ozuna's sentencing, that his conviction was eligible for expungement. The expungement statute, Ozuna argues, "creates a substantive right under state law" to have the stigma of a criminal conviction removed. He relies on our statement in Hemp that "once the defendant successfully completes his sentence, he has earned, and is automatically entitled to, expungement." Hemp, 359 Wis. 2d 320, ¶23. Ozuna further argues that he was deprived of this right without due process of law, because the circuit court did not provide him with notice and an opportunity to be heard before it denied expungement. Ozuna analogizes a denial of expungement to a revocation of probation. This court has recognized that due process requires an evidentiary hearing before the State may revoke probation, State ex rel. Johnson v. Cady, 50 Wis. 2d 540, 548, 185 N.W.2d 306 (1971), and Ozuna argues that the same rule should apply to a denial of expungement.

15

¶25 We disagree with Ozuna and hold that he did not have a protected liberty interest in expungement in this case. The reason that a probationer has a protected liberty interest in remaining on probation is because the probationer has already been granted a conditional right to freedom. See Johnson, 50 Wis. 2d at 548 ("After one has gained the conditional freedom of a probationer . . . the state cannot summarily revoke such status . . . .") (emphasis added). By contrast, Ozuna cannot claim that he gained any entitlement to expungement, because the record shows that he did not meet the statutory criteria for "successful completion of the sentence" under Wis. Stat. § 973.015(1m)(b), which include satisfying all the conditions of probation. See Hemp, 359 Wis. 2d 320, ¶22.

¶26 Ozuna suggests that the circuit court should have held a hearing before denying expungement, but he has not pointed us to any relevant factual dispute that such a hearing could have resolved. He has never questioned DOC's determination that he violated the no-alcohol condition by engaging in underage drinking during his period of probation. Because Ozuna was not entitled to expungement based on his failure to satisfy the no-alcohol condition, we also conclude that there was no violation of due process in this case, because Ozuna does not challenge the underlying facts. See Conn. Dept. of Pub. Safety v. Doe, 538 U.S. 1, 8 (2003) ("Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme."); Stipetich, 235 Wis. 2d 69, ¶25 (affirming

16

dismissal of a due process claim on summary judgment where the petitioner "did not produce sufficient evidence to allow a fact-finder to conclude that she had been deprived of a constitutionally protected property or liberty interest").

¶27 Because Ozuna did not satisfy the conditions of his probation, he never earned the expungement for which he was otherwise eligible. Therefore, Ozuna was not deprived of any right or status which he previously possessed under state law. Absent facts permitting a conclusion that Ozuna was entitled to expungement under Wis. Stat. § 973.015(1m)(b), his reputational interest in hoping to obtain expungement is not, by itself, a protected liberty interest. See Weber, 129 Wis. 2d at 73.

¶28 For these reasons, we conclude that Ozuna's due process rights were not violated.

IV. CONCLUSION

¶29 We hold that the circuit court properly denied expungement in this case, because Ozuna did not meet the statutory requirements to be entitled to expungement. The statutory requirements for expungement include the requirement that the probationer has satisfied the conditions of probation. Here, DOC notified the circuit court that Ozuna did not meet all the conditions of probation because Ozuna violated the circuit court's expressly ordered condition to not possess or consume alcohol during the term of probation. Therefore, based on this notification from DOC, the circuit court properly denied expungement. Further, because Ozuna never met the requirements to be entitled to expungement, the circuit court's denial of

17

expungement did not violate his right to the due process of law. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶30 ANN WALSH BRADLEY, J. *(dissenting)*. The majority bends over backwards to reach its conclusion. Not only does its analysis undermine the purpose of the expunction statute, it also sub silencio overrules recent precedent. Ultimately, because the implications of its holding are yet unclear, it sows the seeds of confusion for circuit courts and litigants alike. And for what?

¶31 Since the circumstances leading to this case arose, the form in question has been modified to eliminate the potential for confusion.[1] Due to these revisions, those circumstances will not again be presented. Thus, it is hard to imagine what benefit can be gained by the uncertainties and problems that inevitably will be wrought by the majority's sub silencio overruling of our clear precedent.

¶32 I determine that the more prudent course is to take an approach that is consistent with the purpose of the statute and

---

[1] This case arose because of an unclear form utilized by the Department of Corrections to notify the circuit court that the defendant had completed his probation. The form had multiple boxes for the probation agent to choose from—boxes indicating whether the offender had or had not successfully completed his probation and boxes indicating whether certain terms of probation had been met.

Here, the probation agent checked the boxes labeled "The offender has successfully completed his/her probation" and "All court-ordered conditions have not been met." Based on those seemingly inconsistent markings, the circuit court determined that the defendant had not satisfied the terms of his probation and denied expunction. The old form has now been modified to include only two boxes: one indicating that the offender has successfully completed probation and one indicating that the offender was not successful.

our recent precedent. Under that approach, youthful offenders can be deemed to have successfully completed their sentences when they sufficiently comply with the terms of probation.

¶33 Accordingly, I respectfully dissent.

I

¶34 The focus of this case is Wisconsin's expunction statute, Wis. Stat. § 973.015. It permits the expunction of an offender's criminal record if the offender meets various criteria, including successful completion of probation:

> . . . when a person is under the age of 25 at the time of the commission of an offense for which the person has been found guilty in a court for violation of a law for which the maximum period of imprisonment is 6 years or less, the court may order at the time of sentencing that the record be expunged upon successful completion of the sentence if the court determines the person will benefit and society will not be harmed by this disposition.

Wis. Stat. § 973.015(1m)(a)(1).

¶35 "[S]uccessful completion" is defined in Wis. Stat. § 973.015(1m)(b). It requires an offender to have "satisfied the conditions of probation":

> A person has successfully completed the sentence if the person has not been convicted of a subsequent offense and, if on probation, the probation has not been revoked and the probationer has satisfied the conditions of probation.

¶36 Wis. Stat. § 973.015(1m)(b) anticipates that a certificate of discharge will issue upon successful completion of probation and that the certificate "shall have the effect of expunging the record":

2

Upon successful completion of the sentence the detaining or probationary authority shall issue a certificate of discharge which shall be forwarded to the court of record and which shall have the effect of expunging the record . . . .

¶37 The majority reads this language in a manner that severely limits an offender's ability to utilize the statute. In doing so, it undermines the statute's purpose, overrules recent precedent sub silencio, and creates confusion. I address each in turn.

A

¶38 It is well established that the purpose of Wis. Stat. § 973.015 is "'to provide a break to young offenders who demonstrate the ability to comply with the law' and to 'provide[] a means by which trial courts may, in appropriate cases, shield youthful offenders from some of the harsh consequences of criminal convictions.'" State v. Matasek, 2014 WI 27, ¶42, 353 Wis. 2d 601, 846 N.W.2d 811 (quoting State v. Leitner, 2002 WI 77, ¶38, 253 Wis. 2d 449, 646 N.W.2d 341).

¶39 This is a laudable purpose given the extreme consequences a criminal conviction can have on an individual. As Legal Action of Wisconsin's amicus brief observes, the consequences of a criminal conviction are both wide-ranging and long lasting:

> The American Bar Association (ABA) has identified over 38,000 statutes and regulations that impose collateral consequences on people convicted of crimes. Over half of these laws deny employment opportunities . . . .An offense history that once would have languished in the practical obscurity of an old court file, has now become a permanent and highly stigmatized part of an individual's public history.

3

Amicus Br. 2. The negative impact a criminal record can have on employment is particularly troubling as "[r]esearch consistently shows that finding quality steady employment is one of the strongest predictors of desistance from crime." Devah Pager, Double Jeopardy: Race, Crime, and Getting a Job, 2005 Wis. L. Rev. 617, 647.[2]

¶40 Thus, expunction offers not only a substantial benefit to an offender and society, it also "offers young offenders a fresh start without the burden of a criminal record and a second chance at becoming law-abiding and productive members of the community." State v. Hemp, 2014 WI 129, ¶19, 359 Wis. 2d 320, 856 N.W.2d 811. It comes as no surprise then that the history of the expunction statute "show[s] a consistent legislative effort to expand the availability of expungement to include a broader category of youthful offenders." Id., ¶20.

¶41 With this background, Wis. Stat. § 973.015 should be liberally construed to provide expunction. See Marquez v. Mercedes-Benz United States, LLC, 2012 WI 57, ¶23 n.19, 341 Wis. 2d 119, 815 N.W.2d 314 (citing Hughes v. Chrysler Motors Corp., 197 Wis. 2d 973, 983, 542 N.W.2d 148 (1996)) ("remedial

---

[2] Other collateral consequences stemming from a criminal record include the denial of government issued licenses or permits, ineligibility for public services and public programs, and the elimination or impairment of civil rights. See http://www.uniformlaws.org/ActSummary.aspx?title=Collateral%20Co nsequences%20of%20Conviction%20Act ("the numbers and complexity of these consequences have mushroomed and the U.S. prison population has grown . . . There is a real concern on a societal level that collateral consequences may impose such harsh burdens on convicted persons that they will be unable to reintegrate into society.").

statutes should be liberally construed to advance the remedy the legislature intended to provide.").

¶42 Yet, the majority interprets the expunction statute in a manner that severely limits an offender's ability to utilize it. Although it correctly states that an offender must "satisfy all the conditions of probation," it seemingly adopts the State's position that the offender's perfect compliance is required in order to be entitled to expunction. Majority Op., ¶13. In doing so, the majority completely ignores Ozuna's argument that the word "satisfy" has been defined to mean "[t]o meet or be sufficient for (a requirement)." See Satisfy, The American Heritage Dictionary of the English Language, (5th ed. 2017)..

¶43 The majority's approach undermines the statute's purpose and the legislature's intent to reach a broader category of youthful offenders. Probationers must adhere to such a myriad of conditions that requiring perfection effectively removes the possibility of expunction. For example, there are the standard rules of community supervision that probationers must follow.[3] These rules range from obtaining approval prior to borrowing money or making a purchase on credit, to reporting for scheduled and unscheduled appointments.

¶44 Under the majority approach, an offender would be denied expunction for missing a single unscheduled appointment due to such unavoidable circumstances as an inability to find a

---

[3] See http://doc.wi.gov/community-resources/Rules-of-Community-Supervision/standard-rules-of-supervision-english.

5

babysitter, getting stuck in traffic, or being unable to leave work. That result is unreasonable and completely at odds with the purpose of the expunction statute.

B

¶45 In addition to undermining the statute's purpose, the majority's opinion also sub silencio overturns recent precedent.

¶46 A scant three years ago, this court considered how an offender obtains expunction. Hemp, 359 Wis. 2d 320. In Hemp, the circuit court had determined at sentencing that the defendant was eligible for expunction conditioned upon successful completion of probation. Id., ¶5. After the defendant completed probation he received a certificate of discharge from the Department of Corrections. Id., ¶6. The circuit court, however, denied his petition for expunction because it was "tardy". Id., ¶9.

¶47 This court examined whether Wis. Stat. § 973.015 placed any burden on the defendant to petition the circuit court for expunction within a specific timeframe and concluded that the duty rested on the detaining or probationary authority, not the defendant. Hemp, 359 Wis. 2d 320, ¶25. We further concluded that "once the detaining or probationary authority forwards the certificate of discharge to the court of record, expungement has been effectuated." Id., ¶29; see also id., ¶25 ("the detaining or probationary authority must forward the certificate of discharge to the court of record upon the individual defendant's successful completion of his sentence and at that point the process of expungement is self-executing.");

6

id., ¶32 ("the forwarding of the certificate of discharge to the circuit court is what triggers expungement").

¶48 In explaining the holding, this court specifically rejected the notion that a certificate of discharge must be approved by the circuit court prior to a grant of expunction. Id., ¶36. We recognized that any inference necessitating circuit court approval would be "impos[ing] additional requirements that are contrary to the statute's plain language." Id. We repeatedly emphasized that the circuit court's role with respect to expunction was limited to its decision at sentencing. Id., ¶¶39, 40, 42. Thereafter, the determination of whether a probationer had successfully completed probation was effectively left to those in the best position to evaluate it: the probation agents.

¶49 The majority now reinserts the circuit court into the process of effectuating expunction. It declares that "a person's statutory entitlement to expungement depends not on whether the court receives a particular notice from the DOC . . . " and that "it is proper for a circuit court to deny expungement if a defendant has not met all three criteria for the 'successful completion of the sentence . . . .'" Majority Op., ¶14.

¶50 These declarations cannot be squared with the holdings in Hemp. A certificate of discharge cannot be the trigger for automatically effectuating expunction if the circuit court has the option to review it and make an independent determination on the matter. Under the majority's analysis, expunction is no

7

longer automatic or self-executing as Hemp mandated. Further, no longer is it the probation agent that exclusively determines whether an offender has successfully completed probation. By reintroducing the circuit court into the expunction process after the DOC has issued its certificate of discharge, the majority unequivocally, yet sub silencio, overrules Hemp, 359 Wis. 2d 320.[4]

C

¶51 In overruling Hemp, the majority creates confusion for circuit courts and litigants alike.

¶52 It is now unclear what will happen when a certificate of discharge is issued. Will it trigger expunction——as the plain language of the statute requires? See Wis. Stat. § 973.015(1m)(b) ("a certificate of discharge which shall be forwarded to the court of record and which shall have the effect of expunging the record . . . ." (emphasis added)).

¶53 Or will the court opt to review it——in clear violation of the Hemp holding? See Hemp, 359 Wis. 2d 320, ¶32 ("the forwarding of the certificate of discharge to the circuit court

---

[4] Recently, 2017 A.B. 331 was introduced in the Wisconsin Legislature to amend Wis. Stat. § 973.015(1m). The proposed legislation would allow for the filing of a petition for expunction with the sentencing court after completion of the sentence. The Legislative Reference Bureau (LRB) analysis explains: "Current law specifies that the expungement order must be made only at sentencing and then the record is expunged when the person completes his or her sentence." The LRB's description of current law is in accord with the plain meaning interpretation set forth in this dissent and underscores that the majority is indeed sub silencio overruling Hemp.

is what triggers expungement"); id., ¶29 ("once the detaining or probationary authority forwards the certificate of discharge to the court of record, expungement has been effectuated."); id., ¶25 ("the detaining or probationary authority must forward the certificate of discharge to the court of record upon the individual defendant's successful completion of his sentence and at that point the process of expungement is self-executing.").

¶54 What criteria will the court use to decide whether to review the certificate of discharge? What procedures will a court follow if it decides to review a certificate of discharge?

¶55 Also left unanswered is what happens if there is a factual debate over whether the offender has satisfied the terms of probation. Must the court hold a hearing? Will the offender have a chance to appear and argue the case? What is the impact of this disarray?

¶56 Rather than providing guidance, the majority leaves a void. It suggests that because Ozuna is not contesting the facts, this case "is not the proper vehicle in which to set forth the procedures a court is to follow when such factual matters are disputed." Majority op., ¶14 n.9. It further

expresses its "confidence" in the circuit court's ability "to resolve such matters fairly." Id.[5]

¶57 The majority's confidence provides cold comfort for a youthful offender hoping to get a second chance through expunction.

¶58 Because the most likely result of the majority's decision is that circuit courts will adopt ad hoc procedures, an offender's chance at expunction could come down to which court receives the offender's certificate of discharge. This poses a whole host of future due process concerns. By creating an opportunity for circuit courts to review whether the terms of probation have been met, and failing to provide any guidance on how to do so, the majority creates more problems than it has solved, leaving confusion in its wake.

II

---

[5] We previously declined the opportunity to revamp our supreme court rule on expunction. On June 30, 2009, the Board of Governors of the State Bar of Wisconsin filed a rules petition seeking changes to Supreme Court Rule (SCR) Ch. 72 (Retention and Maintenance of Court Record). The petition also asked this court to amend SCR 72.06 (Expunction). After public hearing and further discussion the court took no action on the petition, in part because it was aware that the Wisconsin State Legislature was then planning to establish a committee to study the issue of expunction. In ensuing years, a number of legislative proposals have been introduced to address the issue, but none has advanced to fruition. Ultimately, this court voted to dismiss the petition and await further legislative action. For a more detailed history of the petition, see S.Ct. Order 09-07 (issued July 19, 2016).

¶59 Contrary to the majority, I would interpret the expunction statute in a manner consistent with its remedial purpose. See State v. Leitner, 253 Wis. 2d 449, 470, 646 N.W.2d 341 (2002). ("A cardinal rule in interpreting statutes is that an interpretation supporting the purpose of the statute is favored over an interpretation that will defeat the manifest objective of the statute.").

¶60 Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Where the language is ambiguous, a court may consult extrinsic sources, such as the statute's purpose and legislative history, to discern a statute's meaning. Id., ¶48.

¶61 Here, both litigants present reasonable meanings for the words "satisfied the conditions of probation." The State contends that it means perfect compliance with the terms of probation, while Ozuna pointed to a dictionary definition of "satisfy" that reads "[t]o meet or be sufficient for (a requirement)". Satisfy, The American Heritage Dictionary of the English Language, (5th ed. 2017) (emphasis added). Thus, the statute is ambiguous. Kalal, 271 Wis. 2d 633, ¶47 ("a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses.").[6]

---

[6] This court has previously recognized statutory ambiguity created by use of the word "satisfy". Abitz v. Abitz, 155 Wis. 2d 161, 172 455 N.W.2d 609 (1990) (referring to "the ambiguous word 'satisfy' in sec. 766.55(2)(c), Stats.").

11

¶62 As discussed above, the purpose of the expunction statute is well established. It is a remedial statute meant "to provide a break to young offenders who demonstrate the ability to comply with the law," which the legislature has consistently sought to expand. Leitner, 253 Wis. 2d 449, ¶38; see also Hemp, 359 Wis. 2d 320, ¶20. Accordingly, using the definition of "satisfy" that permits expunction when an offender has "sufficiently" complied with the terms of probation is more consistent with the purpose of the statute than using a definition that would limit expunction to offenders with have "perfect" compliance.

¶63 A definition of "satisfy" that is based on sufficiency instead of perfection is also supported by the statute's legislative history.

¶64 In 1983 the legislature amended the definition for "successful completion of a sentence" provided in Wis. Stat. § 973.015(1m)(b). The initial draft of the amendment stated that in order for a probationer to successfully complete a sentence, the probationer "must not violate any conditions of probation." Drafting file for 1983 Wis. Act 519, Legislative Reference Bureau, Madison, Wis. This language was replaced with the current language stating that to successfully complete a sentence, a probationer "must also satisfy the conditions of probation." It appears the legislature expressly considered requiring perfect compliance with the terms of probation and rejected it.

12

¶65 I turn now to apply the definition of "satisfy" based on sufficiency to the case at hand. Although the form from the Department of Corrections indicates that Ozuna violated the term of probation prohibiting any alcohol use (it noted a single citation for underage drinking), no significant violations were reported. Indeed, the Department of Corrections indicated that Ozuna's compliance with the terms of probation was sufficient by checking the box labeled "the offender has successfully completed his/her probation." Accordingly, I conclude that Ozuna successfully completed his sentence.

¶66 Wisconsin Stat. § 973.015 provides that when an offender has successfully completed his sentence, and the probation authority has forwarded a certificate of discharge to the court, it shall have the effect of expunging the offender's record.[7] Here, because Ozuna successfully completed probation, expunction should have been granted automatically when the DOC's verification was received by the court. Hemp, 359 Wis. 2d 320, ¶29. Therefore, the court of appeals should be reversed.

III

¶67 In sum, the majority opinion makes no sense to me. It defies:

---

[7] In this case the Department of Corrections (DOC) issued a Verification Form, rather than a certificate of discharge. That is because the DOC does not issue certificates of discharge to misdemeanants. See Wis. Admin. Code DOC § 328.16(2). Nevertheless, the DOC is required to notify the court of a probationer's successful completion of sentence. Wis. Stat. § 973.09(5)(c). It does so through the Verification Form, which serves as the functional equivalent of a certificate of discharge for purposes of Wis. Stat. § 973.015.

13

- the purpose of the statue;

- the statutory directive that where a certificate of discharge has issued it "shall have the effect of expunging the record . . . ." Wis. Stat. § 973.015(1m)(b);

- a reasonable interpretation of the word "satisfies" that is more consistent with the statute's purpose and legislative history;

- our clear and recent precedent; and

- reality (the majority's apparent demand for absolute perfection is unmoored from the reality of the lives of many youthful offenders).

¶68 It is unclear to me why the majority has bent over backwards to reach its confusing conclusion. What is clear, however, is just how devastating the majority opinion is to the health of our justice system and to the lives of many youthful offenders.

¶69 With the stroke of a pen, the majority has inexorably altered the trajectory of those lives. They will forever wear the scarlet letter of convicted criminal and, together with their families, face a future of collateral consequences for their youthful convictions.

¶70 For the reasons set forth above, I respectfully dissent.

¶71 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

14

1